## No. 18,717.

MARJORIE WELLER NELSON, ET AL *v.* RALPH W. FARR,
ET AL.

(354 P. [2d] 163)

Decided July 11, 1960.   Rehearing denied August 15, 1960.

Mr. WILLIAM R. REILLY, Messrs. TIPPIT, HASKELL & WELBORN, Mr. THOMAS J. GODFREY, JR., for plaintiffs in error.

Mr. C. H. ANDERSON, Mr. HUGH H. ARNOLD, Mr. CHARLES A. KAROWSKY, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

THE parties were in inverse order in the trial court. We will refer to the defendants in error, plaintiffs below, who sued as a class, as the landowners, and to the plaintiffs in error, defendants below, by name.

The landowners filed a complaint seeking injunctive relief. In their action, after averring their ownership of certain lots in Fairacres Addition, situated in the city of Greeley, they sought to impose covenants on the land of defendant Nelson, restricting the use thereof to residential construction only, and to have declared invalid and void an ordinance of the city of Greeley zoning part of the property as Class D business. The action also sought to enjoin the city of Greeley from issuing a permit to Carter Oil Company to build a filling station on the property. Carter had contracted to purchase the property contingent on being able to obtain permission to construct the station. Weller was made a defendant as the common grantor of the owners of the disputed property as well as that upon which the landowners had built their homes. Marjorie Nelson is the daughter of Weller and the recipient of the business-zoned property as a gift from her father.

After trial to the court, "Findings and Judgment" were entered enjoining Nelson, Weller and Carter Oil Company from using the property as contemplated or for any purpose other than residential. The court order

enjoined Carter from erecting the filling station and enjoined the city of Greeley from "zoning or rezoning" the land for any use other than single family dwellings until January 1, 1970. The order enjoined all defendants from enforcing any ordinance in conflict with the restrictive covenants which the court found to be imposed upon the land in question. The order further declared null and void all other ordinances of the city of Greeley in conflict with the restrictive covenants. Later the findings were amended to provide that the injunction prohibiting the city from rezoning any of the lands until January 1, 1970, would be modified to the extent that the city of Greeley could, in the time up to 1970, apply for dissolution of the injunction upon the showing of good cause therefor.

The numerous points enumerated in the summary of argument challenging the validity of the court's injunction and other orders may be summarized as follows:

1. That the court erred in burdening the land with restrictive covenants because in the record there is a lack of that clear and convincing proof necessary before land will be so encumbered.

2. That the orders of the court constituted an assumption of legislative powers and are so sweeping as to embrace property of persons not parties to the suit in the same zoning area.

The historical background of this litigation extends to 1938 when Weller, a Greeley business man, annexed land owned by him in Weld County to the city of Greeley. The land was laid out and platted as Fairacres Addition. At the time of the annexation, blanket restrictions limiting buildings thereon to one family dwellings were placed by Weller on the entire Fairacres Addition. There is no dispute that the residential structures built in this addition conformed to such restrictions. Ten years later, in 1948, other lands adjoining Fairacres Addition owned by Weller, situate in Weld County outside of Greeley, were surveyed, subdivided and annexed to the

city of Greeley as the First Addition to Fairacres. The land consisted primarily of farm land, but there were indications even at that time that the areas surrounding the addition had commercial value. A hospital was being erected, and the possibility of a central throughway or thoroughfare on one extremity was imminent. There was no blanket restriction filed by plat or otherwise to the land platted and annexed in 1948, but as each building site was sold a restriction limiting building thereon to unattached single family dwellings was put in each deed. At the time of the 1948 annexation, Weller had other lands contiguous to the annexed portion which were withheld from the annexation and remained outside of Greeley, in Weld County. No part of the tract withheld from annexation was sold at any time, and it was retained by Weller. In the meantime there was growth and development on two sides of Weller's tract of undeveloped land. A school, hospital, athletic field, some small apartment houses, and buildings containing medical clinics and drug dispensaries and an upholstery shop in an old residence came into being. Weller stated at the trial that he intentionally refrained from having his contiguous undeveloped land annexed and that he refrained from selling individual building sites thereon because he had plans for the development of this land in a manner other than the type of development contained in the restrictions on the property annexed to the city. In 1953 Weller conveyed this tract to his daughter Marjorie Nelson as a gift. In 1955 the city of Greeley requested Marjorie Nelson to annex the tract to the city because it constituted an island in the city completely surrounded by city land. Before the annexation Marjorie Nelson petitioned as a condition precedent to her consent thereto that the city agree to zone the land in various classifications from residence A to business D. Subsequently the annexation was accomplished, and the city, pursuant to its agreement, zoned the property as requested. The particular portion sought by Carter for

the filling station is in the business D zone. Therefore, on June 19, 1957, when Nelson entered into a contract of sale with Carter Oil Company for the land, there was nothing in the record of title to this particular property or the zoning ordinances which would prevent Carter from building a filling station thereon, and Carter, in its answer to the complaint for injunctive relief against it, avers that it had no notice of any restrictions pertaining to said property.

FIRST QUESTION TO BE DETERMINED.

*Under the facts and circumstances as disclosed in the record here, can the court impose burdens and covenants upon land so as to encumber it in derogation of the fee without the benefit of written instruments and against the will of the owner?*

This question is answered in the negative.

██ The trial court came to the erroneous conclusion that the grantor Weller and the individual purchasers of property contiguous to but not encompassed within the tract withheld from annexation, intended to extend the restrictions imposed in the individual deeds to the undeveloped land as well. The court came to this conclusion despite the fact that there is nothing in the record or recorded instruments restricting the use of that particular tract of land. The finding also is contrary to the testimony of Weller as well as his conduct over the years. The evidence is that he purposely kept this property separate and apart and in one tract, awaiting the trend of growth of other property adjacent thereto.

██ Because an order, such as that involved here, is a harsh and possibly unwarranted interference with the free use and enjoyment of the property, the strict and unyielding quantum of proof required before such restrictions will be upheld is nowhere in the law more strictly applied. As this court said in *Flaks v. Wichman,* 128 Colo. 45, 260 P. (2d) 737:

"We are not unmindful of the universal rule that in construing a building restriction, all doubts must be

resolved against the restriction and in favor of free and unrestricted use of property."

We are not alone in that regard. In Missouri the court declared that building restrictions being in derogation of the fee being conveyed by the deed will not be extended by implication to include anything not clearly expressed in the conveyances. The court said:

" * * * The words 'clearly expressed,' as used by this and other courts, have no significance, unless they mean that if a reasonable and substantial doubt is raised by the words employed in the covenant, it must be resolved against the grantor. (Citations.) It is only by such construction that such titles can be made certain, so that the use of lands conveyed in fee *shall not depend upon the diverse opinions of judges as to the minds of the parties to the grant,* but restrictions thereon shall appear plainly written in the grant." (Emphasis supplied.) *Bolin v. Tyrol Investment Company,* 273 Mo. 257, 200 S.W. 1059-1060.

In *Magnolia Petroleum Co. v. Drauver,* 183 Okla. 579, 83 P. (2d) 840, it was said:

" * * * as a fundamental principle of law of real property, restrictions on the alienation and use of land are not favored, and all doubt should be resolved in favor of the free use of property. * * * 'Restrictions on the use of property, being in derogation of the fee conveyed, will not be extended by implication to include anything not clearly expressed.' "

We find no proof to meet the rule of these cases in the record before us. Rather we find the contrary implication, namely that the land was deliberately withheld from annexation to the city and was purposely held as a single, undeveloped tract so that its use could be extended to business if the circumstances warranted it.

Even though we hold that the restrictive residential covenants do not apply to the disputed property here involved, the solution to the litigation is not complete so long as the court's injunction against the city and its

zoning ordinances are allowed to stand, so the second question is:

*Does the evidence support the ruling of the trial court that the city ordinances zoning this tract of land, particularly as Residence A and Business D, is invalid or unconstitutional?*

This question is answered in the negative.

■ We do not find in the court's pronouncements any holding to the effect that there was anything illegal or invalid in the adoption of the zoning ordinance by the city of Greeley as relating to this property. The record discloses the ordinances are within the police power of the city, and there is no contention that it was used illegally or arbitrarily. The ordinances appear to have been duly and regularly adopted, and it may be observed that none of the plaintiff property owners in this action, nor any of the class whom they sought to represent, appeared at the council meeting to protest the adoption of the zoning ordinance. In fact, the record indicates that Weller had a meeting with the representative of the property owners, and, although there is some conflict in the evidence as to the purpose of the meeting and the conclusions then reached, it was stated by those of the plaintiffs who did testify in the matter that they had agreed to the zoning plan presented by Weller. The court's order, in effect, re-zoned the property as Residential A and prohibited the city from altering such zoning or enforcing any zoning in conflict with the court's determination that the property be devoted exclusively to single family dwellings. This is an usurpation of a legislative function. A general statement of the law in this respect is summarized in 62 C.J.S. 557-558, as follows:

"While municipal zoning and building regulations are a legislative, not a judicial, matter, they are subject to judicial review as to their validity. * * * Judicial review is generally limited to validity, and the courts may not substitute their judgment for that of the municipality,

or disturb an exercise of the municipality's discretion in zoning matters, unless the discretion is clearly abused. The courts may not interfere with or control a municipality's zoning power or direct zoning ordinances to be repealed, enacted, or amended."

The judgment, orders and decrees of the court are reversed and the cause remanded with directions to dismiss the action.

MR. JUSTICE HALL and MR. JUSTICE DOYLE concur.