## No. 19,333.

HENRY G. FRANKEL, ET AL. *v.* CITY AND COUNTY
OF DENVER, ET AL.

(363 P. [2d] 1063)

Decided July 31, 1961.   Rehearing denied August 21, 1961.

Messrs. DONALDSON, HOFFMAN & GOLDSTEIN, for plaintiffs in error.

Mr. ROBERT L. McDOUGAL, Messrs. KNOWLES & SHAW, for defendants in error except City and County of Denver, J. D. Arehart and Donald S. Harter.

Mr. DONALD E. KELLEY, Mr. EARL T. THRASHER, Mr. HANS W. JOHNSON, for defendants in error City and County of Denver, J. D. Arehart and Donald S. Harter.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS writ of error is directed to a judgment dismissing an action attacking validity of the Denver Zoning Ordinance as applied to the properties of plaintiffs in error. The parties appear here in the same order as in the trial court, and we shall refer to them as plaintiffs and defendants or by name.

Plaintiffs are owners of two separate and non-adjacent parcels of land, each consisting of four lots situate in an R-1 district in which the permitted use is restricted to single family dwellings. The small area surrounding plaintiffs' properties is a section of a relatively large R-1 district which includes Cheesman Park. This section abuts the westerly edge of Cheesman Park and extends approximately 200 feet west to the alley between Humboldt and Lafayette Streets, and includes property on both sides of Humboldt Street and is bounded on the south by East Tenth Avenue and on the north by East Twelfth Avenue. The area or neighborhood adjacent to and partially surrounding the subject blocks, bounded on the south by East Eighth Avenue, on the north by East Fourteenth Avenue, and on the west by Marion Street, is an R-3 district wherein the permitted use is multiple unit dwellings including apartment houses.

Plaintiffs' application to re-zone their lots from R-1 to R-3, made in compliance with the ordinance amendment procedure, ultimately was denied by City Council. Plaintiffs contend that the principal, if not the sole, ground for the denial of their application was the opposition of a majority of the owners on Humboldt Street, in the R-1 district. After City Council voted adversely on an ordinance to re-zone the area involving plaintiffs' lots, plaintiffs informally applied to the Department of Zoning Administration to re-zone both sides of the 1100 block of Humboldt Street, and were advised that such application would not be acceptable to the Zoning Committee of City Council for the stated principal reason that the owners of adjacent property would oppose such re-zoning.

Subsequently, plaintiffs orally requested a permit for multiple family construction and were advised by the Chief Building Inspector that he "would not consider an application for such permit unless it was cleared for zoning." Thereupon plaintiffs applied to the Zoning Administrator for a zoning permit to erect a multiple unit dwelling on their land. The requested permit was denied because the applicable sections of the ordinance do not include multiple unit dwellings as a use by right. Thereafter plaintiffs applied to the Board of Adjustment for a variance to permit the use of their property for multiple dwelling purposes. After hearing, this application was dismissed for the reason that applicable sections of the ordinance denies the Board jurisdiction concerning use by right cases.

Plaintiffs contend that City Council and the Board of Adjustment have "unlawfully renounced and delegated their powers and their authority to various of the other owners in said R-1 zoning district" * * * "and have illegally refused without the consent or majority vote of such other owners to correct the unlawful zoning of plaintiffs' said property or to apply to it the appropriate R-3 zoning which would be lawful and proper for all

property in the area surrounding plaintiffs' property, and the said Board of Adjustment is without power under said zoning ordinance to grant plaintiffs the relief sought herein."

Plaintiffs also allege that R-1 classification of their lots is unreasonable, unjust, oppressive, unconstitutional, in violation of the due process, equal protection and just compensation provisions of the federal and state constitutions, not in conformity with the city charter, and bears no substantial relation to the public health, safety, morals or general welfare. Plaintiffs also urge that the restrictions of the ordinance as applied to their land are not uniform throughout the area involved and prohibit plaintiffs from making such use of their property as is being made by other owners in the area, and particularly by the owners of adjacent property immediately north and south of plaintiffs' vacant lots, and by the owners of property along Humboldt Street from Eighth Avenue to Colfax and along Twelfth Avenue from Broadway to Cheesman Park.

Following denial of the then defendants' motion to dismiss, the parties stipulated concerning the existing uses of property in the subject section of the R-1 district and in the adjoining R-3 district. The defendants' answer put in issue all material allegations of the complaint. Subsequently all other owners of property in the subject section of the R-1 district were permitted to intervene as parties defendant. After commencement of the action, Dyer purchased an interest in the property sought to be re-zoned and was permitted to intervene as a party plaintiff. At the conclusion of plaintiffs' case, upon defendants' oral motion, the court entered judgment dismissing the action and subsequently denied plaintiffs' motion to alter or amend the judgment.

■ Plaintiffs' argument, although based on several separate and distinct grounds, presents a single and decisive issue for our determination, namely: As applied to plaintiffs' property, is the Denver Zoning Ordinance

unconstitutional? Since plaintiffs attack the constitutionality of the ordinance, they must sustain the burden of establishing the invalidity thereof beyond a reasonable doubt. *Baum, et al. v. Denver, et al.,* 147 Colo. 104, 363-688 P. (2d). In the Baum case we had occasion to consider evidence similar to that offered by the plaintiffs here—the disparity of values as between restricted and unrestricted use of the land. Whereas in the Baum case it was shown that if the land could be put to commercial use it would have greater value than if limited to single family dwellings, here it was shown that if the construction of an apartment house was permitted on plaintiffs' land, the value would be greater than if the property was limited to single family construction. As was pointed out in the Baum case and cases therein cited, such disparity in values for one use as against another is not controlling. In the case at bar, as in the Baum case, there was evidence upon which the court could find that the R-1 classification was not discriminatory, even when limited to single family construction, it being shown that the land of Frankel-Miller among the plaintiffs had increased in value approximately one-fourth since purchased by them.

One factor not present in the Baum case is plaintiffs' contention that the R-1 classification of their property is discriminatory because of the existence of several non-conforming uses within the subject two blocks on Humboldt Street. Two multiple family conversions and a two-family residence are within the area, and one such non-conforming use is next door to the vacant lots of one of the plaintiffs. There are twenty-four addresses in the subject two blocks on Humboldt Street, including the Frankel-Miller vacant lots designated as 1154 Humboldt Street. Twenty of these addresses are single family residences; several of them large mansions wherein some of Denver's notable families have resided. The homes on this street were single family residences long

before the first zoning ordinance was adopted by Denver in 1925 and have been such since that time. The three non-conforming uses were established prior to the effective date of the original ordinance. Such non-conforming uses originally were, and now are, legal as defined by section 617 of the Zoning Ordinance, and their use and character could not be changed by law. By the same doctrine, their presence did not change the true character of Humboldt Street as affecting the twenty-five homes thereon over these many years.

The existence of non-conforming uses within the R-1 district does not affect the validity of the classification, particularly where such uses are few in number. *Lockard v. City of Los Angeles*, 33 Cal. (2d) 453, 202 P. (2d) 38; *People, ex rel. Alco Deree Co. v. City of Chicago*, 2 Ill. (2d) 350, 118 N.E. (2d) 20; *Beckmann v. Talbot*, 264 N.Y.S. 193, 239 App. Div. 835; *Burmore Co. v. Smith*, 124 N.J. Law 541, 12 A. (2d) 353. Also the ordinance zoning this section as R-1 is not discriminatory because it exempts from its operation similar use existing in the district at the effective date of the ordinance. *Magruder v. Redwood*, 203 Cal. 665, 265 Pac. 806; *Marquis v. Waterloo*, 210 Ia. 439, 228 N.W. 870; *Sampere v. New Orleans*, 166 La. 776, 117 So. 827 (affirmed without opinion, 279 U.S. 812, 73 L. Ed. 971, 49 Sup. Ct. 262); *Lombardo v. Dallas* (Tex. Civ. App.), 47 S.W. (2d) 495; *Ballard v. Roth*, 141 Misc. 319, 253 N.Y.S. 6; *Baxley v. Frederick*, 133 Okla. 84, 271 Pac. 257.

The validity of a zoning ordinance establishing restrictive residential districts from which are excluded all business or commercial uses including apartment houses and other multiple unit dwellings was determined by the United States Supreme Court in *Euclid v. Ambler*, 272 U.S. 365, 71 L. Ed. 303, 47 Sup. Ct. 114. There the Supreme Court held that such exclusions from residential districts bear a rational relation to the health, safety, morals, and general welfare of the community. After exhaustive consideration of pertinent cases the Court

summarized the many reasons supporting exclusion of other uses from restricted residential districts. Since the instant case involves exclusion of apartment houses, we quote with complete approval the language appearing at page 120 of 47 Sup. Ct. Rep:

" * * * With particular reference to apartment houses, it is pointed out that the development of detached house sections is greatly retarded by the coming of apartment houses, which has sometimes resulted in destroying the entire section for private house purposes; that in such sections very often the apartment house is a mere parasite, constructed in order to take advantage of the open spaces and attractive surroundings created by the residential character of the district. Moreover, the coming of one apartment house is followed by others, interfering by their height and bulk with the free circulation of air and monopolizing the rays of the sun which otherwise would fall upon the smaller homes, and bringing as their necessary accompaniments, the disturbing noises incident to increased traffic and business, and the occupation, by means of moving and parked automobiles, of larger portions of the streets, thus detracting from their safety and depriving children of the privilege of quiet and open spaces for play, enjoyed by those in more favored localities,—until, finally, the residential character of the neighborhood and its desirability as a place of detached residences are utterly destroyed. Under these circumstances, apartment houses, which in a different environment would be not only entirely unobjectionable but highly desirable, come very near to being nuisances.

"If these reasons, thus summarized, do not demonstrate the wisdom or sound policy in all respects of those restrictions which we have indicated as pertinent to the inquiry, at least, the reasons are sufficiently cogent to preclude us from saying, as it must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having

no substantial relation to the public health, safety, morals, or general welfare."

See also the following cases cited in the Euclid case: *Miller, et al. v. Board of Public Works of City of Los Angeles,* et al., 195 Cal. 477, 234 Pac. 381; *Brett v. Building Commissioners of Brookline,* 250 Mass. 73, 145 N.E. 269; *State, ex rel. Carter v. Harper,* 182 Wis. 148, 196 N.W. 451.

■ There is no merit to plaintiffs' argument that City Council and the Department of Zoning Administration unlawfully delegated power and authority to the owners of other property in the subject R-1 district because of their opposition to re-classification for their property. We know of no case — and none is cited — invalidating legislation because machinery is provided therein to afford affected parties opportunity to protest departure from the terms of an act or ordinance.

The ordinance requires administrative examination by the Department of Zoning Administration and by the Planning Office. It also requires comments, recommendations and reports by said agencies, which in the instant case included a report that the majority of the property owners protested rezoning the two blocks. The ordinance requires City Council to examine all applications and administrative agency reports and to make legislative disposition thereof. Council's legislative disposition of plaintiffs' amendment application was the denial thereof. The record does not indicate to what extent, if any, Council's legislative disposition of the subject application was influenced, controlled or determined by the administrative comments, recommendations and reports of the Department of Zoning Administration and the Planning Office.

■ Only City Council has the power, authority, duty and responsibility to re-zone land within the territorial limits of the municipality. Such power is subject not only to the general limitations imposed by the constitution, but also to the specific limitations prescribed by

ordinance including those expressed in the Declaration of Policy governing amendment procedure. By rejecting the bill for an ordinance to re-zone a small part of the subject R-1 district, Council necessarily determined that there was no manifest error in the classification of plaintiffs' lots. Council also determined that the asserted changed or changing conditions in the particular area or in the municipality generally did not require re-zoning of a small section or part of the R-1 district. In effect Council also determined that the requested re-zoning was not reasonably necessary for the promotion of public health, safety or general welfare.

The determination of the foregoing matters is a legislative function. We are not concerned with the wisdom or the lack of wisdom of such legislative decisions, it not being our function to approve or disapprove of the wisdom or desirability of legislative acts. Nor can we substitute our judgment for that of the legislative body charged with the duty and responsibility of zoning. *Nelson v. Farr*, 143 Colo. 423, 354 P. (2d) 163; *Baum v. Denver*, supra.

Plaintiffs have failed to sustain the burden of proof required by their attack upon the ordinance and the legislative action of City Council. The judgment is therefore affirmed.

MR. JUSTICE MOORE dissents.

MR. JUSTICE FRANTZ does not participate.