No. 23426.

JUANITA SHUMATE *v.* JOHN N. ZIMMERMAN, THOMAS W. BEAN, GUNNER MYKLAND, LELAND S. HUTTNER AND MICHAEL POMPONIO AS INDIVIDUALS AND AS JOINTLY CONSTITUTING AND BEING THE BOARD OF ADJUSTMENT IN AND FOR THE CITY AND COUNTY OF DENVER, STATE OF COLORADO; CHARLES P. VAN DYKE AND ELLEN G. VAN DYKE AND A. H. JANSEN AS ZONING ADMINISTRATOR FOR THE CITY AND COUNTY OF DENVER.

(444 P.2d 872)

Decided August 26, 1968.

JOHNSON, MAKRIS, SIMON & STERLING, HANS W. JOHNSON, for plaintiff in error.

MAX P. ZALL, EARL T. THRASHER, ROBERT M. KELLY, for defendant in error A. H. Jansen.

No appearance for remaining defendants in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THIS writ of error is directed to a judgment of the District Court of the City and County of Denver affirming an order of the Board of Adjustment which held that the storage and repair of a personal racing car maintained as a hobby by defendants in error, Charles P. Van Dyke and Ellen G. Van Dyke, were permissible "accessory uses" in an R-1 district under the Denver zoning ordinances. The individual parties will hereafter be referred to by name, and the Board of Adjustment as the Board. It is to be noted that although the Zoning Administrator was designated as a defendant in error, he adopted in this Court the brief and position of the plaintiff in error.

The Van Dykes appealed to the Board from an order of the Zoning Administrator denying their application for a permit to use the detached garage on their residential property to store and repair their racing car. Such an appeal is authorized by Denver Revised Municipal Code, Section 611.5-4 (1951). Plaintiff in error, Juanita Shumate, the Van Dykes' next door neighbor, appeared at the hearing before the Board as an objector. One letter from the councilman for the district was introduced in opposition to the appeal. Van Dyke introduced 22 letters of approval from residents of the area.

Van Dyke testified that he owned one stock car which he entered in races at Lakeside Speedway from May to September, as a hobby and not as a money-making venture; that he had stored the car in the two-car detached garage on his property since 1954; that he sometimes made repairs on the car, always inside the garage, usually on Saturdays and never later than ten o'clock at night; that he did not start the motor in his garage, and that whenever the car was taken out in the street, it was on a trailer. Mrs. Van Dyke testified that all body work on the car was done at Van Dyke's commercial garage downtown, and that there had been no welding in the garage all the past summer.

Mrs. Shumate testified that she had owned the residence next door to the Van Dykes for 25 years; that the repair of the Van Dykes' racing car had "devaluated" her property; that fumes from the welding had killed her roses; that paint fumes had nauseated her; that there was a "terrible odor," and that "when it first started out, there was a grinding and pounding" noise. On examination by one of the Board members, Mrs. Shumate said she did not know whether the price offered for her home was less than for other homes in the area, because she did not know any of the neighbors.

The Board found that Van Dyke maintained his stock car as a hobby, rather than as a commercial venture, and concluded that keeping the car in his garage and occasionally making repairs thereon were lawful "accessory uses" to his use by right of his property as a single unit dwelling, under Section 612.2-3 of the zoning ordinances, subject to the limitations on external effects of uses contained in Section 612.2-2.

Mrs. Shumate petitioned the Board for a rehearing, which was denied. She then filed a complaint in the district court under R.C.P. Colo. 106, seeking review of the Board's decision. After hearing, the court entered an order affirming the Board.

Mrs. Shumate is here contending that the court erred in sustaining the Board because the Board's decision was based on insufficient evidence and inadequate findings of fact. We affirm the district court and the Board.

The entire argument made here centers around the requirement of Section 612.2-3(3)(a) of the zoning ordinances, that an accessory use must be "clearly incidental and customary to and commonly associated with the operation of the Use by Right." The contention is that there was no evidence adduced, and no finding made, that the repair and maintenance of a racing car is "clearly incidental and customary to and commonly associated with" the occupation of a single-family residential dwelling. When the Board made its finding,

amply supported by Van Dyke's uncontradicted testimony in the record, that the stock car in question was maintained as a hobby and not for the production of income, it placed this car on the same footing as any other motor vehicle which a property owner might keep, and occasionally repair, in his garage. We think the district court's comments on this point are particularly cogent:

"* * * It is difficult for the court to distinguish between the keeping and maintaining of a racing car (stock) from that of a foreign sports car, domestic sports car, hot rod, antique automobile, pickup truck, camper, or for that matter, an old clunker. This is particularly true when the hobby the Van Dykes have is carried on in their garage."

It is obvious that it is usual and customary for occupants of a single-family unit to keep a car and to make occasional minor repairs thereon in a detached garage on the premises. The conclusion of law that this was an accessory use is therefore amply supported by the evidence and the finding of fact.

The Board in its decision was careful to point out that the use in question was subject to the limitations on external effects of uses contained in Section 612.2-2. It made no finding that these limitations had been exceeded in the instant case, nor was there any evidence in the record which would have required such a finding. There was no evidence at all that the repairs in question were carried on anywhere other than in the enclosed area of the garage, or that the volume of sound generated exceeded fifty-five decibels, or that the ground vibrations were perceptible at the lot line, or that there was any outdoor storage of flammable or explosive materials or waste. Mrs. Shumate did testify that noxious fumes were emitted which nauseated her and killed her roses. However, the Board was not required to give absolute conclusiveness to this testimony, in view of Van Dyke's statements that he had used paint on the car only on

one occasion, and that there had been no adverse effect from fumes on any of the flower beds on his own property.

Mrs. Shumate contends that it was necessary for the Board to consider the 22 letters from neighbors submitted by Van Dyke, which largely corroborated his testimony, in order to overcome the weight of her testimony. This, she argues, is reversible error because the letters were hearsay and her counsel properly objected to their introduction into evidence at the hearing, citing *Williams v. New Amsterdam Casualty Co.*, 136 Colo. 458, 319 P.2d 1078. This case held only that a trial court may not reverse an administrative order solely on the basis of hearsay evidence in the record, and has no application here. There is sufficient evidence in this record, aside from the hearsay evidence, to support the Board's decision. It is therefore unnecessary to decide what probative weight, if any, the Board was entitled to give to the hearsay.

It is further argued that the Board findings here were inadequate because Section 611.6-5(2) required the Board to make specific findings as to each of the conditions enumerated in Section 612.2-3(3), defining accessory uses. No further findings other than those made were required under the circumstances of this case, since no conditions of Section 612.2-3(3) were in issue other than the one discussed heretofore.

In view of our holding that, on the facts presented by this record, the Board's conclusion that the use here was a permissible "accessory use" was not improper, it is unnecessary to discuss the further argument that the Board's action amounted to the granting of a "use variance," which it was, of course, without power to grant.

■■■ For the reasons above set forth, we hold that the district court correctly determined that the Board did not exceed its jurisdiction or abuse its discretion when it entered the decision complained of. A review-

494

ing court should not lightly find an abuse of discretion where a zoning authority refuses to restrict an owner's use of his property upon the complaint of persons seeking to benefit their own property by imposing restrictions on another's use of his property. *Board of Adjustment v. Handley*, 105 Colo. 180, 95 P.2d 823.

The judgment is affirmed.

MR. JUSTICE DAY not participating.