## No. 79SC94

### Robert A. Holcomb v. The City and County of Denver

(606 P.2d 858)

Decided February 25, 1980.

252

Pred & Miller, P.C., Stephen P. Rickles, David A. Bottger, for petitioner.

Max P. Zall, Robert M. Kelly, John L. Stoffel, Jr., for respondent.

*En Banc.*

JUSTICE ERICKSON delivered the opinion of the Court.

The zoning issues in this case were created when Robert A. Holcomb failed to comply with a cease and desist order and was brought before the county court on a complaint charging a violation of section 612.2-3(3)(a)[1] of the Revised Municipal Code of the City and County of Denver (Revised Municipal Code). Constitutional attacks on the ordinance were made in the county court and were denied. At the conclusion of a trial to the court,

---

[1] Sections 612.2-3(3) and (3)(a) provide:
".2-3(3). *Accessory Uses.* Incidental only to a Use by Right, any use which complies with all of the following conditions may be operated as an Accessory Use and need not be enclosed.
".2-3(3)(a). Is clearly incidental and customary to and commonly associated with the operation of the Use by Right.
The petitioner was also charged but was not convicted of violating section 612.1-2 of the Revised Municipal Code.

he was found guilty and fined $300. He appealed to the Superior Court for the City and County of Denver and the judgment of the county court was affirmed on the grounds that the petitioner failed to certify a transcript of the hearing on the defendant's motion to dismiss the charges. We granted certiorari to review the judgment of the superior court and we now reverse and remand to that court with directions to dismiss the charges against the petitioner.

On June 16, 1977, the petitioner received an order from the Department of Zoning Administration for the City and County of Denver to cease and desist from maintaining twelve dogs on his residential premises, situated in R-1 residential zone district. The order stated that, under section 612.2-3(3)(a) of the Revised Municipal Code of the City and County of Denver, only three dogs were permitted as an accessory use to a single unit dwelling and that any number in excess of three constituted a violation of the ordinance. The order was predicated upon a rule or regulation[2] promulgated by the Zoning Administrator pursuant to section 611.5-3(1)(f).[3] The petitioner was subsequently charged in county court with a violation of section 612.2-3(3)(a).

Shortly after the filing of the complaint, the petitioner moved for dismissal on the grounds that the application of the zoning ordinances violated the petitioner's constitutional right to due process and equal protection of the laws, and constituted an unlawful and unjustified exercise of

---

[2] The rule or regulation at issue consisted of an interoffice communication bearing the date of October 6, 1975, which set forth:

"There are no existing ordinances of the City and County of Denver which enumerate the number of dogs permitted in one household.

"Dog grooming, breeding, raising and selling dogs is not permitted home occupation. Tutoring of persons as dog trainers is permitted as a home occupation.

"Maintaining and showing dogs is a hobby that is common and customary accessory use but the number of dogs that can be maintained was a question.

"After discussion with Mr. Kelly, I have determined that maintaining more than three (3) dogs for any purpose is not clearly incidental and customary to and commonly associated with the operation of the Use by Right."

[3] Section 611.5-3(1)(f) provides:

"Establish and administer rules and regulations for proceedings with and within the Department, together with regular forms for such proceedings, and a schedule of fees for processing amendments, issuing permits and certificates and for recording those matters and things required by this ordinance to be recorded."

The petitioner did not take an appeal to the Board of Adjustment to review the regulation. *See* section 611.5-4(1), which provides:

"611.5-4(1) Procedure. Any person aggrieved or any officer or department of the municipality may appeal to the Board of Adjustment from any order or decision of the Department. Such appeal shall be taken by filing with the Department and with the Board of Adjustment, within the time provided by the rules of the Board, a notice of appeal specifying the particular grounds upon which the appeal is taken. Upon receipt of a notice of appeal, the Department shall transmit to the Board of Adjustment all of the original documents and materials, or true copies thereof, constituting the record upon which the order or decision appealed from was based."

*See also Shumate v. Zimmerman,* 166 Colo. 488, 444 P.2d 872 (1968).

the police power. At the hearing on that motion, the sole witness was the Zoning Administrator, A. H. Jansen, who testified as to his basis for determining that more than three dogs constituted an unlawful accessory use in an R-1 zoning district. The motion was denied and the petitioner was subsequently convicted in the county court.

The petitioner appealed his conviction to the Denver Superior Court, claiming, *inter alia*, that the county court erred in denying his motion to dismiss. In designating the record for the appeal, however, the petitioner neglected to include the transcript of the hearing on the motion to dismiss as a part of the record. As a consequence, the superior court affirmed the petitioner's conviction, holding that the petitioner's contentions could not be reviewed in the absence of a complete record.

## I.

This case presents the initial question of whether the petitioner's failure to have a transcript of the hearing on the motion to dismiss certified as part of the appellate record precludes a review of his conviction. The superior court held that in the absence of the record concerning the motion to dismiss, there could be no review of any of the grounds asserted by the petitioner. We disagree.

Crim. P. 37(b) provides:

"If appellant intends to urge upon appeal that the judgment or a finding or conclusions is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion. The appellee shall have ten days after service upon him of the notice of appeal to file with the clerk of the county court and serve upon the appellant a designation of any additional parts of the transcript or record which he deems necessary."

Where the appellant challenges a ruling that was based, either in whole or in part, on evidence presented to the lower court, Crim. P. 37(b) imposes the requirement that a transcript of all evidence pertaining to the decision be included in the record. Rule 237(b) of the Municipal Court Rules of Procedure specifies that appeals from courts of record shall be in accordance with Crim. P. 37. Where the challenged ruling was not based upon a weighing or review of evidence, however, this requirement has no application. The appellant is not required by Crim. P. 37(b) to include in the record a transcript of evidence that is not relevant to the issues raised on appeal.

In this case, the only evidence presented during the hearing on the motion to dismiss concerned the basis for the zoning administrator's determination that more than three dogs constituted an unlawful accessory use in a residential area. While Crim. P. 37 barred the petitioner's challenge to that factual determination, including the constitutional question of whether the zoning administrator's order was arbitrary and capricious, the petitioner was not foreclosed from a facial challenge to the

constitutionality of the zoning ordinance or from contesting the ordinance's applicability to the maintenance of dogs in a residential zone. The evidence presented at the hearing on the motion to dismiss consisted of the testimony of the zoning administrator and did not pertain to these issues. Consequently, the petitioner was not barred by Crim. P. 37(b) from raising them on appeal.

## II.

Because the record before us is the same record which should have been reviewed by the superior court, we have elected to consider the petitioner's challenge to the constitutionality of the zoning ordinance, and his challenge to its applicability to dogs, instead of remanding the case to the superior court for further proceedings. Essentially, the petitioner claims that section 612.2-3(3)(a) of the Revised Municipal Code is unconstitutionally vague in that it fails to provide notice of what activities are proscribed and fails to provide guidelines for the ordinance's enforcement. It is the petitioner's contention that, by allowing the zoning administrator to make the determination that maintaining more than three dogs is not an accessory use to a single-unit dwelling, the municipality has improperly delegated its legislative powers.[4]

Zoning ordinances enjoy a strong presumption of constitutionality. *Board of County Commissioners v. Thompson*, 177 Colo. 277, 493 P.2d 1358 (1972); *Frankel v. City and County of Denver*, 147 Colo. 373, 363 P.2d 1063 (1961). Accordingly, in all cases where a party chooses to attack the constitutionality of an ordinance, that individual bears a heavy burden and must demonstrate beyond a reasonable doubt that the challenged ordinance is unconstitutional. *Board of City Commissioners v. Echternacht*, 194 Colo. 311, 572 P.2d 143 (1977); *Board of County Commissioners v. Thompson, supra; Frankel v. City and County of Denver, supra.*

One of the fundamental tenets of due process is that a penal statute cannot constitutionally be applied to deprive an individual of life, liberty, or property unless the statute is drafted with sufficient clarity that it gives a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. *United States v. Batchelder*, 442 U.S. 114, 99 S. Ct. 2198, 60 L.Ed.2d 755 (1979); *United States v. Harriss*, 347 U.S. 612, 74 S. Ct. 808, 98 L.Ed.2d 989 (1954); *Connally v. General Construction Co.*, 269 U.S. 385, 46 S. Ct. 126, 70 L.Ed.2d 322 (1926). Here, since the zoning administrator gave the petitioner fair notice through the cease and desist order that his conduct was in violation of

---

[4] We note that the restriction of a single-family residential zone to specified types of uses deemed compatible in such an area is a valid exercise of the police power. *See Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S. Ct. 114, 71 L.Ed. 303 (1926); *Sechrist v. Municipal Court of San Antonio*, 64 Cal. App.3d 737, 134 Cal. Rptr. 733 (1976).

section 612.2-3(3)(a) of the Revised Municipal Code, the petitioner must show that the zoning administrator's interpretation constituted a legislative decision that could not have been constitutionally delegated by the municipal authorities.

Generally, a municipality may not delegate legislative power to an appointed administrator, although the administrator may be charged with the duty to apply and enforce legislative decisions. *Big Sandy School District No. l00-J v. Carroll*, 164 Colo. 173, 433 P.2d 325 (1967); *H. A. Steen Industries, Inc. v. Cavanaugh*, 430 Pa. 10, 241 A.2d 771 (1968). When a question of improper delegation arises, the test is whether the legislative entity has provided discernible standards so that the administrator's decision can be measured for its fidelity to the legislative will. *City of Eastlake v. Forrest City Enterprises, Inc.*, 426 U.S. 668, 96 S. Ct. 2358, 49 L.Ed.2d 132 (1976). A municipality may delegate the duty to determine whether the facts exist to which an enactment applies, and the duty to effectuate the terms, purpose or policy of an enactment only where it has provided definite standards to delimit the administrator's powers. *H.A. Steen Industries, Inc. v. Cavanaugh, supra.*

Section 612.2-3(3), in its entirety, provides:

"Accessory Uses. Incidental only to a Use by Right, any use *which complies with all of the following conditions* may be operated as an Accessory Use and need not be enclosed.

".2-3(3)(a). Is clearly incidental and customary to and commonly associated with the operation of the Use by Right;

".2-3(3)(b). Is operated and maintained under the same ownership and on the same Zone Lot as the Use by Right;

".2-3(3)(c). Does not include structures or structural features inconsistent with Use by Right;

".2-3(3)(d). Does not include residential occupancy except by domestic employees employed on the premises and the immediate families of such employees;

".2-3(3)(e). If operated partially or entirely in detached structures, the gross floor area of such detached structures shall not exceed ten per cent of the area of the Zone Lot; provided, however, that this limitation shall not apply to detached garages or detached car ports used exclusively by occupants of structures containing the Use by Right or by persons employed in such structures;

".2-3(3)(f). If operated partially or entirely within the structure containing the Use by Right, the gross floor area within such structure utilized by Accessory Uses (except garages and dining rooms for the exclusive use of occupants or persons employed in the structure) shall be greater than:

".2-3(3)(f)(f-1). Twenty per cent of the gross floor area, but not to exceed three hundred square feet, of a single unit dwelling;

".2-3(3)(f)(f-2). Ten per cent of the gross floor area of a structure containing any Use by Right other than a single unit dwelling." (Emphasis added.)

The question before us is whether section 2-3(3)(a) provides ascertainable standards which can be constitutionally enforced by the zoning administrator. It is our opinion that the ordinance is sufficiently specific to pass constitutional muster.

An accessory or incidental use has been defined by the Colorado Court Appeals as:

"[A] use customarily incident to the principal use, and so necessary or commonly to be expected in conjunction therewith that it cannot be supposed the ordinance was intended to prevent it." *Sheridan v. Keen*, 34 Colo. App. 228, 524 P.2d 1390 (1974).

Although the ordinance does not enumerate which activities constitute unlawful accessory uses, any interpretation made by the zoning administrator may be reviewed by the board of adjustment and subsequently by the courts if the landowner feels that his rights have been abused. *Shumate v. Zimmerman*, 166 Colo. 488, 444 P.2d 872 (1968). In our view, the city council could not possibly define by separate ordinance every accessory use which may or may not be made by a person within an R-1 district.

It should be emphasized that the ordinance must be viewed for constitutional purposes in the light of a common sense understanding of what single-family dwellings are customarily used for — what the ordinary man on the street would consider a one-family dwelling to be. *City of Knoxville v. Brown*, 195 Tenn. 501, 260 S.W.2d 264 (1953). As the California Court of Appeals stated when considering a similar ordinance:

"Given the broad but definable range of activity which is included within the use of property 'for a [single-family] residence' it cannot be said that the activities incidental to the maintenance of a single-family residence need to be specified separately. In order for a statute to meet the certainty required under due process standards, it is not necessary that it furnish detailed plans and specifications of the acts of conduct prohibited . . . . Judicial pronouncements, the common law and common understanding supply the requisite certainty for 'residential use' within the meaning of this ordinance."

*Sechrist v. Municipal Court of San Antonio*, 67 Cal. App.3d 737, 134 Cal. Rptr. 733 (1976). Common sense and personal knowledge of what an R-1 district is customarily and ordinarily used for, provides only the roughest of guidelines. We cannot say, however, that the ordinance does not provide sufficient guidelines for it to be constitutionally enforced. *See* note, *Zoning: Accessory Uses and the Meaning of the "Customary" Requirement*, 56 B.U.L. Rev. 542 (1976).

### III.

The petitioner finally contends that section 612.2-3(3)(a) of the Revised Municipal Code does not provide authority for the zoning administrator's regulation restricting the number of dogs that may be maintained in an R-1 residential zone. The issue presented here is not whether the municipality *could* have constitutionally delegated the authority to regulate the number of dogs through a zoning ordinance, but, instead, whether the municipality, in fact, intended to delegate this power to the zoning administrator. It is our view that the municipality did not intend to delegate this authority and, therefore, we hold that the petitioner's conviction for violating the ordinance cannot stand.

In this case both parties concede that the ownership and possession of dogs is incidental to and customary to the occupancy and the use by right of an R-1 district. While there is no existing ordinance of the City and County of Denver which specifically enumerates the number of dogs permitted in one household, there is evidence in the record to show that the city council has considered this potential problem. In response to this and other perceived problems connected with the presence of animals in a residential district, the city council has enacted a number of ordinances which regulate ownership and possession of dogs. Ordinance 752, for example, prohibits dogs running at large. In addition, Ordinance 753 regulates the vaccination of dogs and creates the Denver Municipal Pound. Of even greater significance, however, is Ordinance 754 which deals with protection against dogs and specifically provides the following restrictions:

"754 — Protection Against Dogs

".1.   Barking Dogs, Removal and Disposition of Dog Wastes, Dogs Damaging Property, Public Nuisances; Filing Complaints; Penalty, Violations, Abatement.

".1-1.   It shall be unlawful for any owner, possessor, or person who keeps any dog, to permit such dog, by loud and persistent or habitual barking, howling, or yelping to disturb any persons or neighborhood, and the same is hereby declared to be a public nuisance and prohibited.

".1-2.   It shall be unlawful for any person who possesses, harbors, or is in charge of any dog not to immediately remove excrement deposited by said dog upon a common thoroughfare, street, sidewalk, play area, park, or upon any other public property, or upon any private property when permission of the owner or tenant of said property has not been obtained, and such is hereby deemed to be a public nuisance and prohibited. Dog excrement shall not be placed in storm sewers or trash containers but shall be disposed in a sanitary manner approved by the Department of Health and Hospitals.

".1-3.   It shall be unlawful for any owner, possessor, or person who keeps any dog to permit such dog whether or not running at large to destroy, damage, or injure any shrubbery, plants, flowers, grass, lawn, fence, or

anything whatsoever upon any public premise or upon any private premise owned or occupied by a person other than the owner, possessor, or keeper of such dog, and the same is hereby declared to be a public nuisance and prohibited."

Given the specificity with which the municipality has addressed virtually all of the conceivable problems that are associated with the presence of dogs in a residential area, we are of the opinion that the City and County of Denver, through its City Council, has not delegated to the zoning administrator the authority to determine by regulation the number of dogs which may be kept in an R-1 district as an accessory use.

Accordingly, we reverse the judgment of the Superior Court for the City and County of Denver, and remand this cause to that court with directions to dismiss the charges.