No. 20,529.

UNITED STATES OF AMERICA *v.* CHARLES L. SMITH, ET AL.,
COUNTY COMMISSIONERS IN AND FOR THE COUNTY OF
EL PASO, COLORADO, ET AL.
(389 P. [2d] 409)

Decided February 17, 1964.

Mr. LAWRENCE M. HENRY, United States Attorney for the District of Colorado, Mr. ARTHUR L. FINE, Assistant, for plaintiff in error.

Mr. EDWIN STRAND, Mr. BERNARD L. TROTT, Mr. ROBERT W. JOHNSON, Mr. BEN S. WENDELKEN, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE MCWILLIAMS delivered the opinion of the Court.

THE present writ of error poses a question as to the propriety of certain actions of the Board of County Commissioners of El Paso County wherein land situate near the United States Air Force Academy was rezoned.

The parties to the litigation are as follows:

1. The United States of America, hereinafter referred to as USA, the fee owner of all lands included within the United States Air Force Academy;

2. The several members of the Board of County Commissioners for El Paso County, hereinafter referred to as the Board;

3. The several members of the Planning Commission for El Paso County, hereinafter referred to as the Planning Commission;

4. Falcon Estates Corporation, hereinafter referred to as Falcon, the owner of 160 acres lying contiguous to the southern boundary of the Air Force Academy;

5. Tudor Land Company, Inc., a corporation hereinafter referred to as Tudor, the owner of a 360 acre tract lying to the south and east of the Academy; and

6. O. J. Miller, hereinafter referred to as Miller, the owner of about 24 acres also lying south and east of the Academy premises.

For several years prior to 1960 the land owned by Falcon was zoned "A-2 Farming," it apparently having been the practice in El Paso County for land first brought under zoning regulations to be zoned "A-2 Farming" which is a rather broad classification applicable to farming areas and a rural-type economy. Under

this particular zoning the following are illustrative of permitted uses: One (two-family) dwelling unit per five acres, quarries, gravel pits, race tracks, rodeo grounds, saw mills, livery stables, stock raising, commercial bulk storage and sales of gasoline, propane and butane.

During 1960 Falcon and its predecessor in title sought rezoning of this entire 160 acres, appearing first before the Planning Commission and then before the Board, all of which culminated in the Board's changing the zoning on this particular tract from "A-2 Farming" to "A-5-A Rural Residential District." This change of zoning constituted "an upgrading or increasing of restrictions in the area," the record disclosing that this acreage was in the process of transition from farming and ranching use to suburban residential use. About the only "lessening" of restrictions, if such it be, was that — by way of example — one (one-family) dwelling could now be placed on no less than 2½ acres, whereas formerly a dwelling unit housing two families could be placed on no less than 5 acres.

As noted above, Tudor owned 360 acres and in 1961 it sought to change the zoning on what was described as "a postage stamp corner of this entire area," consisting of some 20 acres, from "A-1 Garden Home District" to "C-2 Suburban Business District." The following uses were permitted in an "A-1 Garden Home District": two family dwellings, trailer homes, power plants, mines, quarries, gravel pits, clay pits, oil and gas wells, race tracks, rodeo grounds, saw mills, lumber yards, livery stable, stock raising, kennels, veterinary hospitals and other commercial uses. During the time when the aforementioned zoning was in effect, a freeway was constructed in this area, and it was shown that the 20 acre tract owned by Tudor and for which a change in zoning was sought was situate some 800 feet south of the Air Force Academy's southern boundary and was bounded on the east by the aforementioned freeway, on the south by a highway interchange and on the north and west by

a creek. The Board after several hearings granted this request for a change in zoning.

In 1961 Miller also sought and eventually obtained from the Board a change in the zoning of his 24 acres from "A-1 Garden Home" to "C-2 Suburban Business District." This particular tract of land was described as one lying "between the railroad and the highway." The Miller and Tudor properties were separated by the aforementioned freeway, each abutting thereon.

On this state of events, the USA filed a complaint in the nature of certiorari against the Board, the Planning Commission, Falcon, Tudor and Miller, contending that the aforementioned changes in zoning were generally improper in that each constituted "spot zoning" and that the Board abused its powers and acted arbitrarily, capriciously and "with a reckless disregard of plaintiff's rights." Additionally, the USA argues that inadequate notice was given of the several hearings before the Board; that the Board improperly attempted to attach and impose "conditions" before granting the requested changes; and that there was noncompliance by the Planning Commission with C.R.S. '53, 106-2-1, et seq., concerning the adoption of a so-called "master plan."

The main contention of the USA is that the present rezonings are classic examples of "spot zoning," denounced by us in *Clark v. Boulder,* 146 Colo. 526, 362 P. (2d) 160 and as a corollary of this line of argument it is then urged that neither Falcon, Tudor nor Miller made any showing of such "changed conditions" as would justify the rezoning action taken by the Board. With this we do not agree. In our view *Clark v. Boulder,* supra, is readily distinguishable from the instant case. There the zoning authority authorized the erection of a filling station in a residential area, and on review this attempted rezoning was invalidated with the general observation that the change was not made for the purpose of furthering a comprehensive zoning plan, but was primarily designed to relieve a particular property owner

from the restrictions of zoning regulations. Here, we are faced with the fact that land historically used for ranching and farming purposes and hence supporting a rural-type economy is in the transitional state to suburbia and the present rezonings simply give recognition to that fact. The Falcon property is being readied for the primary purpose of building residential homes on a minimum of $2\frac{1}{2}$ acres. As to the Miller and Tudor property, the construction of a freeway and highway interchange are most certainly indicative of "changed conditions." Suburbia, like urban areas, must have commercial or business areas as well as residential districts. In short, we do not consider the present rezonings to be "spot zoning" and hold that the Board did not act arbitrarily or abuse its powers in its various actions whereby it rezoned the property of Falcon, Tudor or Miller.

The remaining assignments of error are essentially procedural in nature, and when viewed in context none constitute a ground for reversal. To comment in connection therewith would only prolong this opinion and contribute little to the already extensive body of law on the subject of zoning.

In closing we quote the following language appearing in *Baum v. Denver,* 147 Colo. 104, 363 P. (2d) 688:

"[T]his Court does not sit as a super-zoning commission. Our laws have wisely committed to the people of a community . . . the determination of their . . . destiny, the degree to which industrial may have precedence over the residential, and the areas carved out of each to be devoted to commercial pursuits. With the wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life."

So in the instant case, we cannot be concerned with the wisdom of the various actions taken by the Board. The scope of our judicial inquiry is to determine whether there is evidence of such a change in conditions as to support the action taken. We hold that there is,

and hence the judgment of the trial court approving the actions of the Board is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE DAY not participating.