No. 21051.

Frank Huneke *v.* Belle Glaspy, et al.
(396 P.2d 453)

Decided November 9, 1964.

Messrs. YOUNG and YOUNG, for plaintiff in error.

No appearance for defendants in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

ON July 10, 1962, the City Council of Colorado Springs, after a public hearing, enacted an ordinance changing the zoning of approximately three-fourths of the 1200 block on the west side of Glen Street and the entire 1200 block on the east side of Glen street from R-3 Residence Zone to C-4 Neighborhood Business Zone. The action was taken upon the application of plaintiff in error Huneke and one Doss, owners of the property involved.

Subsequent to the enactment of the ordinance, this suit was filed against the city and various officials thereof by several residents and owners of property within the vicinity wherein the change of zoning was effected. Plaintiffs sought injunctive relief and a declaratory judgment that the ordinance was invalid. Huneke and Doss intervened below and the city took no active part in the defense of the suit. At the conclusion of the pro-

ceedings, the trial court entered judgment declaring the ordinance invalid and permanently enjoining the city and its officers from granting any permit for the construction or alteration of any building pursuant thereto.

From the judgment thus entered, Huneke prosecutes this writ of error. The defendants in error have made no appearance here.

The trial court based its judgment on the following conclusions of law:

"1. That ordinance 2788 of the City of Colorado Springs, purporting to effect a change of zone from R-3 Residential to C-4 Neighborhood Business with respect to the properties owned by the Intervenors in the 1200 block of Glen Avenue, was not adopted by the City Council in furtherance of a comprehensive zoning plan, but rather was contrary to and violated the previously adopted comprehensive plan of development for the area.

"2. That said ordinance was not adopted by the City Council to promote any of the public purposes set forth in Section 39-2 of the zoning ordinance of the City of Colorado Springs, 1954, as amended, but rather was adopted for the sole benefit of Intervenors.

"3. That there had been no change of conditions in the neighborhood, such as to justify a change to commercial zoning between April, 1961, when a similar zone change request was denied by the City Council, and May, 1962, when Intervenors' application culminating in the adoption of Ordinance 2788 was filed.

"4. That the City Council's zoning reclassification of the subject property was an arbitrary and improper exercise of the police power, and that Ordinance 2788 was therefore void and of no effect."

The underlying basic facts in the instant case are not in dispute, and we are faced only with the question of whether the trial court properly applied the law thereto.

The record discloses that the subject property and property in the immediate vicinity had for many years

been zoned residential. At present, the property is bounded on the east by Monument Creek and beyond that by Monument Valley Park, both of which constitute a natural barrier between subject property and residential homes situated along the eastern boundary of the park; on the west by railroad tracks and then by the recently constructed Monument Valley Freeway; on the north by a few old homes and city offices and truck shops; including large new city usages for those purposes; on the south by Uintah Street, which is now a major access route to the Monument Valley Freeway, and across Uintah Street to the south by a combined business and museum known as the Van Briggle Pottery, which exists as a nonconforming use. The change of zone to C-4 would allow, principally, such uses as real estate and insurance agencies, gasoline stations, bakeries, barber and beauty shops, custom tailor shops, delicatessens and similar small businesses. In our view, the trial court erred in invalidating the change.

 Of critical importance here is the limited role of the judiciary in zoning cases. The judicial branch is ill-equipped to sit as a zoning commission and to sift through the facts and weigh the nuances involved. Fundamentally, a zoning ordinance is presumed to be valid; and one assailing it bears the burden of overcoming that presumption, and the courts must indulge every intendment in favor of its validity. *Baum v. City and County of Denver,* 147 Colo. 104, 363 P.2d 688. A classification in a zoning ordinance as a means of attaining a permissible end is not to be declared invalid if the state of facts is such that the action of the zoning body can reasonably be sustained. *Raymond v. Commissioner of Public Works of Lowell,* 333 Mass. 410, 131 N.E.2d 189. The rule is well stated in 101 C.J.S. *Zoning* Sec. 68:

"Zoning ordinances or regulations will not be declared unreasonable and arbitrary unless they are found to be plainly and palpably so, or unless it is shown that if the ordinance is enforced the consequent restrictions will

preclude the use of property for any purpose to which it is reasonably adapted. *Accordingly, where the reasonableness of a zoning ordinance is fairly debatable, it must be upheld. \* \* \*"* (Emphasis supplied.)

The following pertinent comment in *Brae Burn, Inc. v. City of Bloomfield Hills* and *Robinson v. City of Bloomfield Hills,* 350 Mich. 425, 86 N.W. 2d 166, quoted in *Baum v. City and County of Denver,* supra, is worthy of repetition here, as bearing upon the relative powers of the courts in such matters:

" \* \* \* Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny, the degree to which the industrial may have precedence over the residential, and the areas carved out of each to be devoted to commercial pursuits. With the wisdom or lack of wisdom of the determination we are not concerned. *The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life.* Let us state the proposition as clearly as may be: It is not our function to approve the ordinance before us as to wisdom or desirability. For alleged abuses involving such factors the remedy is the ballot box, not the courts. \* \* \*" (Emphasis supplied.)

In the case at bar, the record shows that the subject property is in an area undergoing rapid change from what it once was. The city recently constructed business offices and truck shops north of this area which added substantially to the traffic flow. The immediate vicinity in which the property is located consists of small homes that are of wood construction from 25 to 55 years old. Of great significance are the changes wrought by the fairly recent construction of the Monument Valley Freeway. Uintah Street is now a major access route to the freeway and this has resulted in a substantial increase in automobiles—and people—coming through the area. The more expensive homes in the area lie on the east side of Monument Creek and are shielded by that nat-

ural barrier and by a park with trees, plants and shrubs from the subject property.

There is also in the record testimony from a former member of the Colorado Springs Planning Commission, who is also a recognized appraisal expert, that the area was in decline; that the change in zoning would serve to conserve property values and promote general welfare; that the change in zoning would not adversely affect the residential or economic qualities of the residence properties in the area; that the change in zoning established a logical use for the area and was consistent with the comprehensive zoning plan.

Moreover, a study of Exhibit B, which is a zoning map of a portion of Colorado Springs in which the subject area is located, clearly shows that the general plan, in the original zoning ordinance in the area depicted in Exhibit B, is to locate small parcels of land as neighborhood business areas, or C-4, adjacent to R-3 zones.

█ The evidence, as we have outlined it above, presented a fairly debatable question as to whether the action of the City Council was unreasonable and arbitrary and a deviation from a general plan.

On the state of the record here the trial court was in error in declaring that the City Council acted arbitrarily and in substituting its judgment for that of the City Council. See *U. S. v. Smith,* 154 Colo. 209, 389 P.2d 409; *Zahn v. Board of Public Works of City of Los Angeles,* 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074.

*Clark v. City of Boulder,* 146 Colo. 526, 362 P.2d 160, which apparently was relied upon by the trial court, is clearly distinguishable. In *Clark,* there was no substantial change in the conditions in the area from the time the comprehensive zoning plan, including a planned shopping center, was adopted. In the instant case, testimony showed an old area in which there had been a great change in circumstances since the original zoning was adopted, which change the legislative body was en-

titled to consider in determining whether the zoning should be changed.

■ One additional fact should be noted. The trial court apparently limited its consideration of changed circumstances to the period between 1961 (when a similar request for zone change was refused) and 1962, when the instant request was granted. This was clearly erroneous.

Under the circumstances of this case, it was proper for the City Council to consider all changes in conditions in the area from the time the area was zoned R-3 in determining whether a change in zoning should be promulgated in the area.

The judgment is reversed and the cause remanded with directions to dismiss the complaint.