484 P.2d 134 (1971)
Robert M. MOORE, on behalf of himself and others similarly situated, Plaintiff-Appellant,
v.
CITY OF BOULDER, Colorado, Robert W. Knecht, Dr. Richard E. Geesaman, Thomas D. Waugh, Charles A. Haertling, John C. Buechner, Dwayne C. Nuzum, Richard C. McLean, James M. Bowers, Howard C. Klemme, Defendants-Appellees,
The Archdiocese of Denver, Intervenor-Appellee.
No. 70-582.
Colorado Court of Appeals, Division II.
February 23, 1971.
Rehearing Denied March 16, 1971.
Certiorari Denied May 17, 1971.
*135 Grant, Shafroth, Toll & McHendrie, Donald B. Gentry, Denver, for plaintiff-appellant.
Walter L. Wagenhals and Ronald B. Porter, Boulder, for defendants-appellees.
Casey, Klene & Horan, Donald A. Klene, Denver, for intervenor-appellee.
Selected for Official Publication.
PIERCE, Judge.
This is an appeal of an action brought under R.C.P.Colo. 106, by plaintiffs who are owners of residential property located near a 2.1 acre tract of land rezoned by the City of Boulder (the City) from a Single-Family Residence District to a Planned Development District. The Archdiocese of Denver (the Church), owner of the tract and applicant for rezoning, was permitted to intervene, and the case was submitted to the trial court for review of the record made in public hearings held by the City Council. The trial court upheld the City's action in passing the rezoning ordinance, finding that the City Council did not exceed its jurisdiction or abuse its discretion in enacting the ordinance. Plaintiffs seek to reverse this judgment.
The Church owns a nine-acre tract of land located in a large Single-Family Residence (SR-3) District. The eastern 2.1 acres of this property comprises the subject property for which rezoning was sought. This site is situated at a transition point between several areas zoned for multi-family, apartment and business uses, lying to the north and northeast of the subject property. There is a church on the west, an elementary school on the south, and one single-family residence across the street, opposite the southeast corner and more than 200 feet from the nearest building in the proposed District.
A Planned Development (PD) District is a modern concept somewhat novel to traditional rezoning. R. Anderson, American Law of Zoning, §§ 5.16 and 8.38. Rezonings usually result in a change in the use of certain land from one broad category to another, such as from residential to business. For example, once a property owner has been successful in obtaining a zoning for a business use, he may then use his land for any one of a multitude of permitted uses in the business zone without regard to the effect on contiguous zones.
A PD rezoning also allows for change in use from the previous zoning, but it is much more restrictive. Millbrae Assn. for Residential Survival v. Millbrae, 262 Cal.App.2d 222, 69 Cal.Rptr. 251. Although its intent is to permit diversification of uses, such uses must be in harmony with the surrounding neighborhood, must not jeopardize or reduce zoning standards in the area and should promote the general welfare of the community. Further, the use and method for carrying out such use are strictly limited to the plan presented to and approved by the City Council. Changed conditions are not a prerequisite to the establishment of a PD District. The prime requisite to such an establishment is that it must be compatible with the existing zones from which it is carved. Beall v. Montgomery County Council, 240 Md. 77, 212 A.2d 751.
The Boulder ordinance providing for PD Districts requires a special review by the City Council of the proposed use, in addition to a site plan of the proposed development. The City Council may, in order to effectuate the purposes of a PD District, *136 impose upon such a plan any reasonable conditions to insure that it will be compatible with the surrounding neighborhood. Once a PD District has been established, any change in the site plan or the approved use must be submitted to and approved by the City Council. In this instance, the stated purpose for the PD zoning is to alleviate a demonstrated and dire need for low-cost housing within the City of Boulder.
The scope of our inquiry in this matter, and that of the trial court, is limited by R. C.P. Colo. 106(a) (4), which states:
"Review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or aubsed its discretion."
Within the framework of this rule, we will discuss the two principal problems presented to us.

I.
The first question presented is: WHAT ZONING LAW GOVERNS  STATUTE OR HOME RULE MUNICIPAL ORDINANCE?
The Boulder Zoning ordinance in question is a legislative act presumed to be valid and reasonable. Baum v. City and County of Denver, 147 Colo. 104, 363 P.2d 688; Huneke v. Glaspy, 155 Colo. 593, 396 P.2d 453.
Plaintiffs, however, contend that the City is precluded from adopting this rezoning ordinance as it is not in compliance with C.R.S.1963, 139-60-1 and 139-60-3, which read as follows:
139-60-1. "Grant of Power  For the purpose of promoting health, safety, morals or the general welfare of the community, the legislative body of each city and incorporated town is hereby empowered to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes. Such regulations may provide that a board of adjustment may determine and vary their application in harmony with their general purpose and intent, and in accordance with general or specific rules therein contained. * * *"
139-60-3. "Purposes in View  Such a regulation shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets * * *."
Their argument is that the particular PD plan approved in this case does not meet the specifications of a previously adopted comprehensive plan of the City of Boulder and that the proposed zoning does not promote the public welfare.
The City contends that the ordinance in question fully complies with Colorado zoning statutes. Even in the absence of such compliance, however, it further contends that its powers in this area are not derived from statutory law but from Colo.Const. Art. XX, § 6, which frees Home Rule Cities from the control of state law in zoning matters of the type before us.
Before we can resolve the discretionary question, we must determine whether a zoning ordinance adopted by a Home Rule City, aimed at establishing low-cost housing in a specific area within that city, is a matter of statewide concern, purely local concern, or of mixed concern. Woolverton v. Denver, 146 Colo. 247, 361 P.2d 982; Klemme, The Powers of Home Rule Cities in Colorado, 36 Colo.L.Rev. 321.
We rule that the matter before us is a question of purely local concern and that the City derives its authority to enact zoning ordinances of this type and content under the Home Rule provisions of the Colorado Constitution and not from state statute. Colby v. Board of Adjustment, 81 Colo. 344, 255 P. 443; Averch v. City and County of Denver, 78 Colo. 246, 242 P. 47; City and County of Denver v. Hallett, 34 Colo. 393, 83 P. 1066; Mauff v. People, 52 Colo. 562, 123 P. 101. See also, Rabinoff v. District Court, 145 Colo. 225, 360 P.2d *137 114. Any alleged conflict, then, between the ordinance in question and the provisions of Chapter 139 of the Colorado Statutes, as to which controls, is resolved in favor of the local ordinance.

II.
The question then becomes: DID THE CITY COUNCIL ABUSE ITS DISCRETION IN APPROVING THIS PARTICULAR ZONING?
The record discloses that the Church proposed to build 24 dwelling units grouped in four buildings on the site which, under existing SR-3 zoning, would permit only 12 one-family dwellings, along with various other community uses such as schools, churches, and municipal facilities. Financing, cost of development, expenditures for maintenance, qualifications for occupancy, and the amount of rent charged, are all to be controlled by a federal rent subsidy program. The announced purpose of the district is to provide dwelling units for low-income families or persons. There is ample evidence to indicate that, in order to insure that the housing would be compatible with the surrounding land uses and would not adversely affect the character and integrity of the neighborhood, the low-rise units were designed so they would be of a residential scale.
The record further shows that proper notice was given, that full public hearings were held, and that all of the procedural aspects required by ordinance and due process of law were followed meticulously by the City. The hearings did not produce any unanimity of opinion as to the desirability of the rezoning, but there was more than ample support in the evidence to warrant the Council's conclusion that the intent and aims of the ordinance were well met by the proposed plan of the Church. Plaintiffs, on the other hand, fell far short of showing that they had been deprived of any reasonable use of their property by operation of the zoning ordinance. Madis v. Higginson, 164 Colo. 320, 434 P.2d 705.
We cannot say, as a matter of law, that the City Council acted unreasonably, arbitrarily, or abused its discretion. Baum v. City and County of Denver, supra; Huneke v. Glaspy, supra.
Plaintiffs rely heavily on Clark v. Boulder, 146 Colo. 526, 362 P.2d 160, which held:
"Property owners have the right to rely on existing zoning regulations when there has been no material change in the character of the neighborhood which may require re-zoning in the public interest."
The Clark case, however, dealt with changing a residential to a commercial area by spot zoning. A filling station was to be allowed in a residential area. Such a zoning change was completely unwarranted by any change in the character of the neighborhood or by any valid reason for a change, constituted obvious damage to surrounding property values and enjoyment, and was incompatible with contiguous land use. Here, we are dealing with only relatively minor changes within the same range and scope of residential zoning. Furthermore, although no changed conditions are necessary to establish a PD District, there has already been a change in the character of the neighborhood bordering the proposed PD District brought about by previous adoption of ordinances creating multi-family zones in the area, and there has been an increase in the need, within the city as a whole, for more lowcost housing.
Judgment is affirmed.
SILVERSTEIN and DUFFORD, JJ., concur.