MR. JUSTICE LEE
delivered the opinion of the Court.
This is an appeal from a judgment of the District Court of Boulder County enjoining the appellants, Ralph W. Thompson and Lenna A. Thompson, from using their 8-acre tract of land in violation of the zoning resolution of Boulder County, Colorado. The appellants’ land was zoned A-Agricultural. Specifically, the appellants were enjoined from using their property for the storage of sixty automobiles, scrap metal and other discarded materials. They were ordered to remove all but four of the automobiles from the premises within sixty days. We affirm the judgment.
The facts concerning the controversy are substantially undisputed. At the time appellants purchased their land in February of 1966, it was zoned for agricultural use. They used the property as their family home. Additionally, they pastured a few cattle, raised hay, and maintained a few pieces of farm equipment on the premises.
In 1960 Mr. Thompson commenced collecting and restoring old Packard automobiles as a hobby. By 1964 he had approximately twenty Packards on the premises. At the time of this action in June of 1969, there were fifty Packards, six Studebakers, and four other vehicles kept on the property, some of the latter being licensed passenger cars, including a large bus and a Volkswagen bus maintained for the personal use of the family. Other items stored on the premises were two rows of miscellaneous automobile parts and components used by Mr. Thompson in repairing and restoring the old cars. *281 Additionally, the Thompsons had nineteen commercial washing machines temporarily stored on their property. These machines apparently were not involved in this controversy.
There was no evidence that the Thompsons were maintaining any commercial enterprises on their land. They had sold no cars, nor auto parts, and were not engaged in a wrecking business.
The Thompsons had not applied for rezoning of their property to a zone which would specifically permit the use here complained of.
Complaints had been made to the county building and zoning administrator concerning Thompsons’ use of their property, which resulted in this action being brought pursuant to C.R.S. 1963, 106-2-23, and Section XXI, 21.3 of the county zoning resolution.
The gravamen of the complaint was that Thompsons were using their property, which was zoned A-Agricultural, for junk yard purposes as a “junk yard” is defined in Section XX, 20.16 of the zoning resolution; and that a junk yard is an impermissible use under the A-Agricultural zone regulations. A junk yard is defined in the resolution as follows:
“A building, structure or parcel of land, or portion thereof, used for collecting, storage or sale of waste paper, rags, scrap metal, or discarded materials; or for the collecting, dismantling, storage, salvaging, or demolition of vehicles, machinery or other materials.”
Junk yards are specifically permitted as a principal use under Section XIV, 14.1(4) of the zoning resolution in General Industrial Districts.
Thompsons answered the complaint, contending their use for storing automobiles was a valid accessory use under the zoning resolution; that the prohibition of this use was arbitrary, capricious and in violation of the Fifth Amendment to the United States Constitution and of Article II, Section 15, of the Colorado Constitution; that the regulation was not reasonably related to the health, safety and morals of the community and was therefore an improper exercise of *282 the police power; and that the zoning regulation denied them due process of law.
The trial court entered specific findings that the permissible uses in an agricultural district did not include the storage of automobiles; that this was not an accessory use and clearly not incidental, customary nor associated with any permitted uses in an agricultural district; that the use of a portion of the property for storage of automobiles was within the definition of a “junk yard” as set forth in the zoning resolution; and that the provisions of the zoning resolution as related to the land in question were reasonable and constitutional. The court thereupon granted the plaintiff board of county commissioners the injunctive relief it sought.
I.
 Concerning Thompsons’ first argument, we disagree that the storage of sixty automobiles is an accessory use permitted by the zoning resolution. Section XVI, 16.1 defines accessory use as follows:
“(1) An ‘accessory building and use’ is a subordinate use of a building, other structure, or tract of land, or a subordinate building or other structure:
“(a) Which is clearly incidental to the use of the principal building, other structure or use of land;
“(b) Which is customary in connection with the principal building, other structure or use of land; and “(c) Which is ordinarily located on the same lot with the principal building, other structure or use of land.”
It is clear from this definition that an accessory use is one which is subordinate to, clearly incidental to, customary in connection with, and ordinarily located on the same lot with the principal use.
The record shows that the Thompsons used their tract of land for two specifically permitted principal uses under Section VII, A-Agricultural District, 7.1 USES PERMITTED, of the zoning resolution: first, as their family dwelling; and, second, for the grazing of their cattle. There is no support in the record for the conclusion that the storage of sixty automobiles and the automobile parts and components were *283 subordinate to, incidental to, customary in connection with, and ordinarily located on the same tract with the principal residential and agricultural uses to which Thompsons put their property. To conclude otherwise, in our view, would be fanciful and unrealistic, and result in a distorted and strained application of the provisions of the zoning resolution.
Counsel’s argument that other specific principal uses as permitted in the agricultural zone may reasonably require the storage of heavy machinery and equipment on the premises does not lend strength to his contention here. It is clear that the storage of harvesters, binders, combines, tractors, reapers, mills, and the like are reasonably related to farming operations; that the parking of cranes and dredging equipment in connection with permitted sand and gravel operations would be a proper accessory use; and that the placing of oil drilling equipment on the ground would be accessory to a specifically permitted oil drilling operation. Here, the storage of Packard automobiles cannot reasonably be said to be an accessory use, as defined in the zoning resolution, to the principal use of the premises as a dwelling or as a farm.
We agree with the trial court that the storage of the vehicles, as demonstrated by the circumstances here in evidence, falls within the definition of a “junk yard” as defined in the zoning resolution, and such use is not permitted either as a principal or an accessory use in the A-Agricultural zone.
II.
Concerning appellants’ attack on the constitutionality of the zoning resolution, we again note that the courts will indulge every intendment in favor of a zoning resolution and that the presumption of constitutionality casts the heavy burden upon one who seeks a declaration of invalidity of proving beyond a reasonable doubt that the resolution is unconstitutional. Wright v. Littleton, 174 Colo. 318, 483 P.2d 953; Huneke v. Glaspy, 155 Colo. 593, 396 P.2d 453; Frankel v. Denver, 147 Colo. 373, 363 P.2d 1063; Baum v. Denver, 147 Colo. 104, 363 P.2d 688. Here, the trial court concluded the resolution was constitutional and we agree *284 that the appellants did not meet their burden of showing otherwise.
A. Appellants argue that the definition of a junk yard, particularly that it includes the collection and storage of automobiles, is an unreasonable classification and is therefore invalid. That the definition of “junk yard” in the resolution may embody a broader concept than ordinarily embraced within the term, does not per se invalidate the classification. The board of county commissioners, as the legislative body, has a wide prerogative under C.R.S. 1963, 106-2-10, in classifying and regulating uses of land for trade, industry, recreation and other purposes, and it is not the function of the courts to determine how uses shall be defined or what uses shall be permitted in various districts under comprehensive zoning resolutions. Roeder v. Miller, 159 Colo. 456, 412 P.2d 219; Huneke, supra. We cannot say as a matter of law that the definition of a junk yard, as contained in the resolution under consideration, and the exclusion of a junk yard from the A-Agricultural zone, was so illogical, arbitrary and unreasonable as to be constitutionally void.
B. Appellants next contend the definition of “junk yard” is too indefinite and vague to be enforced. We disagree. The activities included in the definition are set forth in the disjunctive. The use of the land for any one of them — collecting, dismantling, storage, salvaging, or demolition of vehicles — constitutes the maintenance of a junk yard within the meaning of the definition. In our view, the definition is sufficient to guide landowners in the use of their lands.
C. We find no merit to appellants’ argument that denial of the use to which they have put their land amounts to arbitrary and capricious discrimination when other “similar” uses are specifically permitted under the A-Agricultural District regulations. It is not helpful to argue the similarity or dissimilarity of “oil drilling, quarries, mining, sand and gravel operations and similar land extractive uses” as compared with the maintaining of a junk yard. Whether one use is more or less objectionable than another is for legislative determination in classifying land uses in respective zoning districts. *285 Roeder, supra. Appellants have made no showing that others within the same district have been permitted to do what they have been denied the right to do and we discover no denial of due process or equal protection under the United States or Colorado Constitutions.
D. Appellants argue that the zoning restriction is based only on aesthetic consideration. This bald conclusion finds no support in the record. C.R.S. 1963, 106-2-14, sets forth the many purposes for which zoning regulations may be designed and enacted, including not only the health, safety, morals, convenience, order, prosperity or welfare of the present and future inhabitants of the state but also, among other purposes, the classification of land uses and distribution of land development and utilization, protection of the tax base, fostering of the state’s agricultural and other industries, and the protection of urban and non-urban development. In the absence of evidence to the contrary, we shall not presume that the board of county commissioners did not give ample consideration to the multiple purposes of zoning when it adopted the zoning resolution. The recitations of the ENACTING CLAUSES of the resolution, Section I, 1.1 PURPOSE, indicate otherwise.
E. The last argument we consider is that the zoning unlawfully prohibits the participation in a lawful activity anywhere in the entire county. It is quite clear, as appellants admitted in their testimony, that the activity prohibited in the A-Agricultural zone is a permissible principal use in the GI-General Industrial District. The record contains further evidence that such use might be permissible in the C-Commercial District and also in an ED-Economic Development District (areas for special uses which have economic value for the county and which can be developed to be compatible with surrounding areas.)[1] In the final analysis, this argument boils down to one of inconvenience to the appellants. The *286 principle — that a zoning ordinance is not to be held unconstitutional because it prohibits the most desirable and convenient use of the land — is applicable to this argument. Wright, supra; Madis v. Higginson, 164 Colo. 320, 434 P.2d 705; Baum, supra.
The judgment is affirmed.

 An application must be made to the county planning commission for an ED-Development District classification and certain conditions must be satisfied before such zoning will be permitted. Appellants had made no application for such rezoning.