## No. 25395

**Joseph V. Famularo v. The Board of County Commissioners of Adams County, Colorado, and Jerry L. Yost, David P. Cran, and Glen Lancaster, as members thereof**

(505 P.2d 958)

Decided January 22, 1973.

Hyman A. Coggan, Galligan and Foley, Richard B. Foley for plaintiff-appellant.

Berger, Rothstein, Gehler & Cohen, Robert R. Gehler, for defendants-appellees.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The plaintiff, Joseph V. Famularo, purchased approximately 150 acres of land in the unincorporated area of Adams County. At the time of purchase, a major part of the land was within a mineral conservation district, a portion was in a flood control district, and a very small part was zoned for industrial use. Several months after purchasing the land, the plaintiff sought to have the property rezoned. Specifically, the plaintiff requested that the major portion of his land be placed in a mobile home district with a small part of the land zoned for commercial use. The requested rezoning was denied by the defendant Board of County Commissioners.

Thereafter, the plaintiff sought review of the commissioners' decision in the district court pursuant to C.R.C.P. 106(a)(4). Pursuant to C.R.C.P. 57, he also sought a judgment declaring that he had been deprived of his property without due process of law. Following a hearing on each claim, the district court held that the commissioners' refusal to rezone the plaintiff's property was not an abuse of discretion or in excess of the commissioners' jurisdiction. The court further held that the plaintiff had not been deprived of his property without due process of law. We affirm.

I.

Chapter 8 of the Adams County zoning regulations relates to conservation districts in general and flood control and mineral conservation districts in particular. The plaintiff contends that all of Chapter 8 is void for the reason that counties have no statutory or constitutional authority to exercise the powers here involved. This contention is without merit.

The state has specifically granted county commissioners the authority to regulate, by resolution, the uses of land in unincorporated areas for "trade, industry, residence, recreation, or other purposes, and for flood control." 1967 Perm. Supp., C.R.S. 1963, 106-2-12(1). This statute further authorizes the establishment of districts or zones in order to

accomplish such regulation. Clearly, the Adams County commissioners were statutorily authorized to establish flood control districts by resolution.

The Adams County mineral conservation district is designed to conserve sand and gravel resources located in the county by prohibiting extensive or permanent development over sand and gravel deposits until such deposits have been removed. Uses of land within the district are limited, and there are provisions relating to the manner of excavating and processing sand and gravel and to the rehabilitation of areas subject to sand and gravel extraction. Uses are similarly limited in the flood control districts.

We have previously held that a board of county commissioners has a "wide prerogative in classifying and regulating uses of land for trade, industry, recreation and other purposes . . . ." *Board of County Commissioners of Boulder v. Thompson,* 177 Colo. 277, 493 P.2d 1358 (1972). We view the grant of authority contained in 1967 Perm. Supp., C.R.S. 1963, 106-2-12(1) as sufficiently broad to authorize the establishment of a mineral conservation district such as the one established by the Adams County commissioners.

## II.

The plaintiff next argues that all of Chapter 8 of the zoning regulations is invalid because of an unlawful delegation of power to the Adams County Planning Commission in paragraph 8-B-1:

"No structures shall be allowed for any use unless specifically authorized by the Planning Commission pursuant to the provisions of these regulations."

The defendant states that the inclusion of the term "by the Planning Commission" in paragraph 8-B-1 resulted from an editing error and that this term should be deleted from the provision. It is true that other provisions of the regulations are such that paragraph 8-B-1 would be meaningful if the words "by the Planning Commission" were deleted. It is further true that the zoning regulations would still be viable and operable if paragraph 8-B-1 were entirely deleted. The regulations contain a severability clause. Assuming *arguendo*

that paragraph 8-B-1 is invalid, it is not involved in this case and any invalidity would not affect the portions of the regulations which are involved here.

## III.

The plaintiff further urges that the regulations relating to mineral conservation districts so limit the uses of land included in such districts as to be unconstitutional on their face under Colo. Const. art. II, § 25 and U.S. Const. amend. XIV. The plaintiff states that the regulations prevent all property owners in mineral conservation districts from using their property for any reasonable purpose or for any length of time without the express permission of the defendants. We do not agree.

It is well established that a zoning regulation is presumed to be valid and that the invalidity of the regulation must be shown beyond a reasonable doubt. *Board of County Commissioners of Boulder v. Thompson, supra.* No such showing has been made here. The zoning regulations relating to mineral conservation districts provide for at least three uses by right, requiring no permission and having no time limit; two uses by right subject to application for a permit; four temporary uses; and, additionally at least eight permitted uses and at least four special uses. Although the uses of land in mineral conservation districts are limited, limitation upon land use is one of the fundamental purposes of zoning (*Baum v. Denver,* 147 Colo. 104, 363 P.2d 688 (1961)) and, in this case, is necessary to achieve the purposes of the mineral conservation district. Further, sufficient uses are allowed in the districts so that we cannot say the regulations, on their face, amount to a taking of property without due process of law.

## IV.

The plaintiff argues that the mineral conservation district regulations, as applied to his property, are unconstitutional under Colo. Const. art. II, § 25 and U.S. Const. amend. XIV. He further argues that the defendants could not refuse to place the major part of his property in a mobile home district under the same constitutional provisions since the only

reasonable use for the property is as a mobile home park.

■ As stated in *Nopro v. Town of Cherry Hills Village,* 180 Colo. 217, 504 P.2d 344:

"[T]his Court has often announced the fundamental rule that to sustain an attack upon the validity of a zoning limitation, the aggrieved property owner must show that the enforced restriction upon his property will preclude its use for any purpose to which it is reasonably adapted. Accordingly, where the reasonableness of a zoning ordinance is fairly debatable, it must be upheld. *Madis v. Higginson, supra; Hueneke v. Glaspy,* 155 Colo. 593, 396 P.2d 453; *Baum v. Denver,* supra."

Implicit in the trial court's holding here is a finding that the mineral conservation zone does not preclude the use of plaintiff's property for any purpose to which it is reasonably adapted.

The following uses are included within the list of "permitted" or "special" uses or uses by right in the mineral conservation district: farming; residences; horse and dog racetracks; greenhouses and plant nurseries; fur farming; drive-in theatres; auto race tracks and drag strips; and outdoor shooting ranges. The regulations state that the uses listed as "special" or "permitted" are examples and not limitations on the uses of land within these categories.

Although the plaintiff has farmed the land, there is nothing in the record to show that he has sought to devote his land to other "permitted" or "special" uses listed, or uses similar to those listed. Nor has the plaintiff shown that the nature of the land will not permit any of these other uses.

■ There was evidence in the record that the plaintiff's property could be used for agricultural purposes, some commercial purposes and residential purposes. Although the evidence is conflicting as to the possible uses of plaintiff's land, there was sufficient evidence to support the trial court's finding. In such a case, we will not substitute our opinion for that of the trial court. *Kearney Invest. v. Capitol Fed.,* 169 Colo. 30, 452 P.2d 1010 (1969). Since the reasonableness of the zoning regulation, as applied to plaintiff's property, is

fairly debatable, it must be upheld. *Nopro v. Town of Cherry Hills Village, supra.*

■ Although there was testimony to the effect that other uses of plaintiff's land would not be as profitable as mobile home use, this court has consistently held that the validity of zoning regulations is not determined by the "highest and best use concept or in terms of dollars and cents profitability." *Nopro v. Town of Cherry Hills Village, supra.*

V.

■ We find no merit in plaintiff's argument that the trial court erred by confining the hearing on the claim brought pursuant to C.R.C.P. 106(a)(4) to a review of the record of the proceedings before the defendants and the Adams County Planning Commission. *Board of County Commissioners of Jefferson. County v. Simmons,* 177 Colo. 347, 494 P.2d 85 (1972).

The judgment is affirmed.

MR. JUSTICE KELLEY dissents.

MR. JUSTICE KELLEY dissenting.

My disagreement with the majority stems from my belief that the state has *not* delegated to the counties the power to set up mineral conservation districts through use of their zoning powers.

A county is a political subdivision of the state. As such it possesses only the powers *expressly* conferred upon it by the state constitution and statutes, plus the implied powers reasonably necessary to carry out the express powers. *Board of County Commissioners of Dolores County v. Love,* 172 Colo. 121, 470 P.2d 861 (1970). The majority feels that the general language in 1967 Perm. Supp., C.R.S. 1963, 106-2-12, grants the specific power to establish mineral conservation districts. I cannot agree. By its terms, 1967 Perm. Supp., C.R.S. 1963, 106-2-12, does not specifically grant the power to create mineral conservation districts to counties, and such power cannot be inferred from any of the granted powers.

The policy statement by the legislature contained in 1969 Perm. Supp., C.R.S. 1963, 3-15-3, wherein "the full develop-

ment of the state's natural resources to the benefit of *all* the citizens of Colorado" (not just those of Adams County) shows the intention of the General Assembly to *not* delegate the responsibility of mineral conservation to counties, but provides that this responsibility be retained by the state and be carried out by the department of natural resources. Further, one of that department's divisions, the Colorado geological survey, is specifically charged to,

"coordinate and encourage by use of appropriate means the full development of the state's natural resources, as the same are related to the geological processes that affect realistic development of human and mineral utilization and conservation practices and needs in the state of Colorado, all of which are designed to result in an ultimate benefit to the citizens of the state."

The legislature having expressly relegated the responsibility of conservation of natural resources to the state, it is difficult for me to understand how the delegation of that responsibility can be inferred from the language of 106-2-12.