Craig **RAYGOR**, Plaintiff–Appellant,

v.

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF EL PASO,** Defendant–Appellee.

No. 99CA2135.

Colorado Court of Appeals.
Division IV.

Nov. 9, 2000.

Rehearing Denied Feb. 1, 2001.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.

Craig Raygor, Pro Se.

Vaughan & DeMuro, Gordon L. Vaughan, Sara Ludke Cook, Colorado Springs, CO, for Defendant–Appellee.

Opinion by Judge TAUBMAN.

Plaintiff, Craig Raygor, appeals the trial court's summary judgment in favor of defendant, Board of County Commissioners of the County of El Paso (BOCC), approving the BOCC's adoption of a zoning plan for the unzoned eastern portion of El Paso County. We affirm.

On November 12, 1998, the BOCC directed the county planning department to prepare a zoning plan for the unzoned portion of El Paso County.

In February 1999, a postcard was mailed to over 3,000 owners of unzoned property in El Paso County informing them of the proposed zoning plan. The residents were informed of a special planning commission meeting, two public informational meetings, and the BOCC meeting where the zoning plan would be considered for adoption. All of these meetings were open to the public. A second letter was mailed to the same residents later that month reminding them of the meetings and requesting that they return a survey regarding the proposed zoning plan.

On March 9, 1999, the planning commission certified the zoning plan created by the planning department to the BOCC. On March 25, 1999, the BOCC voted to adopt the proposed zoning plan by a vote of 3–2. Plaintiff thereafter initiated this action, and the judgment at issue here resulted.

## I. Summary Judgment

Initially, we note that, despite the BOCC's contention that many of the issues raised by

Raygor may not be considered on appellate review because they were not raised in the trial court, our review of the record indicates that these issues were properly presented there.

Raygor argues that the trial court erred in granting summary judgment because: (1) material facts remain in issue, (2) the trial court did not allow him to complete discovery, and (3) the trial court did not rule on his motion to strike an affidavit submitted by the BOCC before granting its motion for summary judgment. We perceive no error.

■ Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56. The burden is on the moving party to establish that no genuine issue of fact exists and any doubts in this regard must be resolved against the moving party. *Greenberg v. Perkins*, 845 P.2d 530 (Colo.1993). Where evidence is susceptible of a contradictory, yet reasonable interpretation, summary judgment is not appropriate. *Blitz v. Marino*, 786 P.2d 490 (Colo.App.1989).

When determining whether to grant a motion for summary judgment, a trial court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits. C.R.C.P. 56(c). The nonmoving party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts. *Moffat County State Bank v. Told*, 800 P.2d 1320 (Colo.1990).

■ Appellate review of a summary judgment is *de novo*. *Cung La v. State Farm Auto. Insurance Co.*, 830 P.2d 1007 (Colo. 1992).

## A. Material Facts in Issue

Raygor contends that the trial court erred in granting the BOCC's motion for summary judgment because there are material facts in dispute. We disagree.

Raygor offers numerous examples of what he believes are material facts at issue. However, most of these allegations relate to questions of law, which we discuss below. Of the questions of fact that he asserts remain, none is material.

One question of fact that exists according to Raygor concerns whether the certified zoning plan and building code were made available for public inspection in accordance with § 30–28–125, C.R.S.2000.

Section 30–28–125 provides, in pertinent part: "Upon the adoption of any zoning ordinance or regulation, or map, the board of county commissioners shall file a certified copy of each in the office of the county clerk and recorder, which copies shall be accessible to the public."

In an affidavit, Raygor asserted that he went to the county clerk's office fourteen days before the public hearing and the zoning plan was not available for public inspection. However, the planning director also submitted an affidavit, certifying that the zoning plan was given to the county clerk and recorder and made available to the public before the hearing.

The latter affidavit demonstrates that the requirement of the statute was met, and Raygor does not dispute that the plan was filed with the clerk and recorder at some point, albeit not fourteen days before the public hearing. Thus, there was no material fact at issue and summary judgment was appropriate.

## B. Discovery

■ Raygor further argues that the trial court abused its discretion in granting the BOCC's motion for summary judgment when discovery was not complete. We disagree.

In order to obtain more time for discovery after a motion for summary judgment has been filed, a party must file an affidavit under C.R.C.P. 56(f). *Card v. Blakeslee*, 937 P.2d 846 (Colo.App.1996). However, Raygor did not submit such an affidavit. Thus, the trial court did not abuse its discretion in reviewing the BOCC's motion for summary judgment.

## C. Motion to Strike

■ Raygor next contends that the trial court erred in not addressing his motion to

strike an affidavit filed by the BOCC. We disagree.

According to C.R.C.P. 56(e), parties may submit affidavits in support of their motion for summary judgment. Here, Raygor challenged the veracity of an affidavit submitted in support of the BOCC's summary judgment motion, and, in his cross-motion for summary judgment, he filed numerous exhibits. However, contrary to the requirement of C.R.C.P. 56(e), he did not file a counter-affidavit specifically contesting the affiant's statements. Instead, he later filed a motion to strike the affiant's affidavit on the grounds that it was misleading and false. The trial court did not rule on this motion.

Even if we assume that it was appropriate to file a motion to strike in these circumstances, the contentions of Raygor's motion were conclusory. Thus, we conclude that the trial court's failure to rule on Raygor's motion to strike was harmless error.

## II. Notice

### A. Section 30–28–112

■ Raygor contends that the BOCC erred in not providing timely notice to the public, under § 30–28–112, C.R.S.2000, of its meeting to consider adoption of the zoning plan. Specifically, he contends that, contrary to the statute, the BOCC notified the public of the hearing before, rather than after, it received a certified zoning plan from the commission. We disagree.

Section 30–28–112 states in pertinent part:
The county planning commission shall certify a copy of the plans for zoning ... to the board of county commissioners of the county. After receiving the certification of said zoning plans from the commission and before the adoption of any zoning resolutions, the board of county commissioners shall hold a public hearing thereon, the time and place of which at least fourteen days' notice shall be given by one publication in a newspaper of general circulation in the county....

On February 23, 1999, the BOCC published a "Notice of Public Hearing Proposed Change to El Paso County Zoning Resolutions and Maps" in The Gazette, a newspaper with a major circulation in Colorado Springs. The notice stated that the hearing was to be held on March 25, 1999.

Contrary to Raygor's contention, the plain language of the statute does not require a board of county commissioners to give notification of a public hearing after the date the zoning plan is certified by the planning commission. Rather, the plain language requires only that the public receive fourteen days advance notice of the hearing before the board of county commissioners. *See Sandomire v. City and County of Denver*, 794 P.2d 1371 (Colo.App.1990) (statute should be interpreted to give effect to plain meaning of words used).

Since the notice here was published on February 23, 1999, and the hearing was held on March 25, 1999, the public received over thirty days notice of the hearing. Therefore, the notice requirement of § 30–28–112 was met.

### B. Adequacy of Notice

■ Next, Raygor argues that the notice of the public hearing regarding the proposed zoning plan was ambiguous. We disagree.

■ Strict compliance with statutory notice requirements for zoning is mandatory. The legislative intent in enacting the zoning statute is that "over-all plans or changes should be given such publicity as will reasonably inform those owners affected, as well as the public, of what is proposed." *Holly Development Inc. v. Board of County Commissioners*, 140 Colo. 95, 106, 342 P.2d 1032, 1038 (1959). The purpose of such notice requirement is to give fair warning to such persons so that they may appear at the public hearing and have an opportunity to be heard. *Board of County Commissioners v. Conder*, 927 P.2d 1339 (Colo.1996).

Here, as discussed above, notice of the meeting was published in the Colorado Springs newspaper, The Gazette. However, Raygor argues that he and at least fifty-five affiants could not comprehend the notice. The notice published was entitled "Notice of Public Hearing / Proposed Change to / El Paso County Zoning Resolutions and Maps."

It specified the date, time, and location of the hearing; the specific portions of El Paso county that were affected by the proposed zoning plan; and it informed the public that a certified copy of the planning commission's action and proposed zoning plan would be available at the office of the planning department.

In our view, the notice was sufficiently clear and understandable to accomplish the purpose required by the statute. Indeed, Raygor saw the notice and appeared at the meeting, along with numerous other concerned citizens. Therefore, the notice published by the BOCC was adequate. *See Board of County Commissioners v. Conder, supra.*

### C. Section 30–28–202

■ Raygor further contends that the BOCC erred in not providing proper notice to the public under § 30–28–202, C.R.S.2000, which applies to the adoption of a building code. Again, we disagree.

> Section 30–28–202 states, in pertinent part: The county planning commission of any county, upon request from the board of county commissioners of the county, may designate part or all of the county for the adoption of a building code. The county planning commission shall certify a copy of the building code to the board of county commissioners of the county. After receiving the certification of said building code from the county planning commission and before the adoption of any building code, the board of county commissioners shall hold a public hearing on the proposed text. The time and place of the hearing shall be designated in a notice to be given by publication once weekly for four consecutive weeks in a newspaper of general circulation in the county....

Raygor argues that the BOCC failed to comply with this statutory notice requirement because it applies to the adoption of "any building code." The BOCC concedes that it did not provide a new notice to comply with this provision. However, it argues that it was not adopting a new building code or "any building code" but was extending an existing building code to a newly zoned area

and that, therefore, this section does not apply. Further, it asserts that proper notice was given when the building code was first approved. We agree with the BOCC.

### III. BOCC Resolutions and Actions

Raygor next contends that the BOCC violated two of its own resolutions in the adoption of the zoning plan. We find no reversible error.

### A. Four–Day Notice

■ Raygor argues that the BOCC failed to give four days public notice before its November 12, 1998, meeting, as required by a BOCC resolution. We are not persuaded.

Resolution No. 98–215, General 58, states in pertinent part: "Although not required by law, the Board desires not to have matters brought before it requiring formal action without a minimum of four days public notice...."

Although Raygor included multiple, identical affidavits in support of his contention that insufficient notice was given, none of the affidavits complied with C.R.C.P. 56(e). As noted, C.R.C.P. 56(e) requires affidavits to be supported by "such facts as would be admissible in evidence."

Here, the affidavits stated that the BOCC did not comply with Resolution No. 98–215, General 58, but they did not assert any facts in support of this conclusion. Therefore, the affidavits are conclusory and did not create a genuine issue of material fact. *See People v. James,* 694 P.2d 356 (Colo.App.1984) (affidavits are not sufficient if supported only by conclusory statements).

Because Raygor offered only conclusory affidavits in support of his contention that the BOCC violated Resolution No. 98–215, we find no error.

### B. Thirty–Day Notice

■ In addition, Raygor argues that the BOCC violated an amendment made to its own motion on November 12, 1998, requiring it to wait thirty days after certification of the zoning plan by the planning commission before it held a hearing to consider approval of

such plan and requiring the zoning plan to be made with "maximum public participation and consultation." We disagree.

At the BOCC's November 12, 1998, meeting, it unanimously passed an amendment to its motion to draft a zoning plan, requiring it to wait for thirty days after the zoning plan was certified by the planning commission before it held a public hearing.

The planning commission certified the zoning plan on March 9, 1999, and the public hearing on this matter was held on March 25, 1999. At the public hearing, it was brought to the BOCC's attention that its meeting violated the November 12th decision requiring a period of thirty days between certification of the zoning plan and the public hearing. By a vote of 3–2, the BOCC voted to ignore the November 12, 1998, resolution and continue with the hearing.

The record supports the BOCC's argument that the adoption of the thirty-day delay was intended to enable the BOCC to comply with the El Paso County Land Development Code (LDC), Chapter IV, Section 3,4(b), requiring thirty days between the date of public notice and the hearing.

The BOCC did comply with the LDC notice provision because thirty days elapsed between February 23, 1999, the date public notice was given, and March 25, 1999, the date the hearing was held.

■ Although the BOCC failed to comply with the requirements of its own amendment, it still complied with the LDC. Further there is no reason a board of county commissioners cannot decide to change its internal operating procedures at a subsequent meeting. *Cf. Forbes v. Goldenhersh,* 899 P.2d 246 (Colo. App.1994) (a trial court has discretion to reconsider a prior ruling on a partial motion for summary judgment before the final judgment is entered).

### C.  Public Participation

■ Raygor further argues that the BOCC disregarded its amendment requiring maximum public participation and consultation when it limited each public speaker to ninety seconds in which to voice his or her opinion. We disagree.

Upon examination of the record, we conclude that the BOCC enacted the ninety-second time limit in an attempt to ensure an orderly meeting and to provide all interested parties an opportunity to comment. The decision to allow ninety seconds was reached because fifty-one citizens wished to comment.

Based upon the record as a whole, we conclude that the BOCC did act with maximum public participation and consultation. The BOCC sent two individual notices to all affected parties, published a notice in the local newspaper, held two informational meetings, and gave all interested parties an opportunity to comment at the hearing.

### IV.  Land Development Code

Raygor argues that the BOCC did not comply with the LDC in four respects. We are not persuaded.

### A.

■ Raygor first argues that the BOCC violated Chapter IV, Section 3,1(b) of the LDC, requiring the planning department to review each individual piece of property that the zoning plan affected. We disagree.

Chapter IV, Section 3,1(b) of the LDC states: "The Planning Department shall review each parcel to determine if it is consistent with the development requirements set forth in the proposed zone district. An investigation into the relationship between the proposed land use and adopted county plans shall be performed."

Raygor asserts that this section requires the planning department to conduct an on-site inspection of each affected parcel of land. However, he cites no authority for this proposition.

Here, in accordance with LDC Chapter IV, section 3,1(b), the planning department conducted a thorough review of each parcel of land by reviewing the assessor's records and investigating the relationship between proposed land use and adopted county plans. The planning department used the information obtained through these reviews and investigations to create a 122 page spreadsheet summarizing its findings.

It would be a time-consuming and impractical use of resources for the planning department to conduct an on-site review of each of the more than 3,000 parcels affected. We conclude that the measures taken by the planning department were sufficient to meet the requirements set forth in the LDC, Chapter IV, Section 3,1(b).

### B.

■ Raygor further argues that the BOCC did not comply with Chapter IV, Section 3.1(d) of the LDC because it failed to notify all of the property owners who could be affected by the zoning plan. We disagree.

Raygor fails to identify property owners who were not notified or to articulate any facts in support of his argument that the BOCC did not notify "all" of the interested property owners. We are not required to search the record for evidence to support this assertion, nor are we required to search for supporting authority. *See In re Marriage of Miller*, 888 P.2d 317 (Colo.App.1994).

Therefore, we reject Raygor's contention that the BOCC violated Chapter IV, Section 3,1(d) of the LDC.

### C.

Raygor next contends that the BOCC failed to follow Chapter VIII of the LDC, which requires the BOCC to comply with all other zoning regulations in the state of Colorado. We are not persuaded.

Chapter VIII of the LDC states, in pertinent part: "Any amendment to the Zoning Regulations of this Code shall be made pursuant to Section 30–28–116, C.R.S., and any other laws of the state of Colorado governing the amendment of Zoning Regulations."

Raygor contends that by virtue of the quoted regulation, the BOCC was required to comply with § 30–28–115(1), C.R.S.2000. Section 30–28–115(1) requires that all regulations be enacted for the purpose of promoting the "health, safety . . . or welfare of present and future inhabitants." Specifically, Raygor contends that because no threat to public health, safety, or welfare was present causing the BOCC to adopt a zoning plan, the zoning plan did not comply with § 30–28–115(1).

■ There is no authority for Raygor's assertion that a zoning plan may only be enacted in response to a threat to public health, safety, and welfare. Section 30–28–115 includes other subsections that provide additional grounds upon which zoning regulations may be enacted, including "the protection of urban and non-urban development." *Board of County Commissioners v. Thompson*, 177 Colo. 277, 285, 493 P.2d 1358, 1362 (1972).

Additionally, there is ample evidence in the record that the BOCC carefully considered public health, safety, and welfare in making its decisions regarding the zoning plan. *See* BOCC Resolution No. P–98–028 (stating that the zoning plan was enacted in the best interest of "public health, safety, morals, convenience, order, prosperity, and welfare").

Therefore, we reject Raygor's contention that the BOCC violated Chapter VIII of the LDC.

### D.

■ Because it was raised for the first time on appeal, we decline to address Raygor's contention that the BOCC violated the LDC by scheduling the review of the zoning plan for a special meeting, rather than at a regularly scheduled meeting. *See Cedar Lane Investments v. American Roofing Supply of Colorado Springs, Inc.*, 919 P.2d 879 (Colo.App.1996).

### V. Authority of Planning Department

■ Finally, Raygor contends that the BOCC violated § 30–28–111(1), C.R.S.2000, which requires the planning commission, and not the planning department, to prepare a zoning plan. The BOCC contends that it did not violate § 30–28–111 because the planning department is staff to the planning commission, and because its request directed to the planning department was in keeping with the statutory requirement. We agree with the BOCC.

Section 30–28–111(1) grants authority to the planning commission to create a zoning

plan, and states in pertinent part: "The county planning commission of any county may, and upon order by the board of county commissioners in any county having a county planning commission shall, make a zoning plan for zoning all or any part of the unincorporated territory within such county...."

Here, at its November 12, 1998, meeting, the BOCC requested the planning department, not the planning commission, to prepare a zoning plan.

On March 9, 1999, the planning commission adopted the zoning plan created by the planning department, and certified the plan to the BOCC.

Based on § 30–28–104, C.R.S.2000, which grants the planning commission authority to employ a staff, we conclude that the planning department is "staff" to the planning commission. Accordingly, it has the authority to perform tasks on behalf of the planning commission. Therefore, the BOCC's direction to the planning department instead of the planning commission complied with the requirements of § 30–28–111.

Judgment affirmed.

MARQUEZ and CASEBOLT, JJ., concur.