644 P.2d 942 (1982)
Robin G. THEOBALD, Plaintiff-Appellee,
v.
The BOARD OF COUNTY COMMISSIONERS, SUMMIT COUNTY, State of Colorado, Summit County Regional Planning Commission, Defendants-Appellants.
Frank PLAUT, Linda Plaut, Robert A. Theobald Co., a general partnership, and Lois G. Theobald Co., a general partnership, Plaintiffs-Appellees,
v.
BOARD OF COUNTY COMMISSIONERS OF SUMMIT COUNTY, State of Colorado, Summit County Regional Planning Commission, Defendants-Appellants.
Steven GROSSBARD, Plaintiff-Appellee,
v.
L. Scott GOULD, County Commissioner; et al., Defendants-Appellants.
PEERLESS DEVELOPMENT CORPORATION, a Colorado corporation, Plaintiff-Appellee,
v.
L. Scott GOULD, County Commissioner; et al., Defendants-Appellants.
RED LTD., a Partnership, Plaintiff-Appellee,
v.
L. Scott GOULD, County Commissioner; et al., Defendants-Appellants.
The DUNKIN GROUP, a joint venture; et al., Plaintiffs-Appellees,
v.
L. Scott GOULD, County Commissioner; et al., Defendants-Appellants.
BLUE VALLEY, LTD., a Colorado limited partnership; Alpine Meadows Development Co., a Colorado corporation; Ptarmigan Associates, a Colorado general partnership; and David A. Ray and Ptarmigan Properties, Ltd., a Colorado limited partnership, its general partners, Plaintiffs-Appellees,
v.
L. Scott GOULD, County Commissioner; et al., Defendants-Appellants.
BLUE RIVER INVESTMENT COMPANY, a Colorado limited partnership, Plaintiff-Appellee,
v.
L. Scott GOULD, County Commissioner; et al., Defendants-Appellants.
FARNCOMB HILL DEVELOPMENT CORPORATION, a Colorado corporation; Baron Investments, Inc., a Washington corporation; and Columbia Savings and Loan Association, a Colorado corporation, Plaintiffs-Appellees,
v.
L. Scott GOULD, County Commissioner; et al., Defendants-Appellants.
Robin G. THEOBALD, Plaintiff-Appellee,
v.
BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SUMMIT, State of Colorado; The Summit County Regional Planning Commission; George Way, Summit County Building Inspector; David Vince, Director of the Summit County Planning Department, Defendants-Appellants.
FARNCOMB HILL DEVELOPMENT CORPORATION, a Colorado corporation; Baron Investments, Inc., a Washington corporation; Columbia Savings and Loan Association, a Colorado corporation, Plaintiffs-Appellees,
v.
L. Scott GOULD, County Commissioner; et al., Defendants-Appellants.
The DUNKIN GROUP, a joint venture; et al., Plaintiffs-Appellees,
v.
L. Scott GOULD, County Commissioner; et al., Defendants-Appellants.
No. 79SA405.
Supreme Court of Colorado, En Banc.
May 3, 1982.
*945 Plaut & Lipstein, P. C., Frank Plaut, Lakewood, for plaintiffs-appellees Robin G. Theobald, et al.
Mitchem & Mitchem, P. C., Allen P. Mitchem, Denver, for plaintiffs-appellees Steven Grossbard and Peerless Development Corp.
Grant, McHendrie, Haines & Crouse, P.C., Donald B. Gentry, Denver, for plaintiff-appellee Red, Ltd.
Gorsuch, Kirgis, Campbell, Walker and Grover, Joseph M. Montano, Shayne M. Madsen, Denver, for plaintiffs-appellees The Dunkin Group, et al.
Philip A. Rouse, Tinkler and Carwin, Stephen E. Tinkler, Denver, for plaintiffs-appellees Blue Valley, Ltd., et al.
Holme, Roberts & Owen, Spencer T. Denison, W. Dean Salter, Denver, for plaintiff-appellee Blue River Inv. Co.
Wegher & Fulton, P. C., Richard W. Breithaupt, J. C. Tim Scates, David R. Demuro, Denver, for plaintiff-appellee Columbia Sav. and Loan Ass'n.
Richard D. Lynton, Breckenridge, for defendants-appellants The Board of County Com'rs of Summit County Colorado, The Planning Commission of Summit County, and the County Officials of Summit County.
Hall & Evans, Harvey W. Curtis, Denver, for defendants-appellants The Board of County Com'rs of Summit County, Colorado, and the Regional Planning Commission of Summit County.
J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Marshall D. Brodsky, Marcia Hughes, Asst. Attys. Gen., Denver, for defendants-intervenors-appellants Colorado Land Use Commission and State of Colorado.
Perry P. Burnett, Denver, for amicus curiae Colorado Counties, Inc.
Blake T. Jordan, Wheat Ridge, for amicus curiae Colorado Municipal League.
Gerald E. Dahl, Susan J. Baluzy, Frisco, for amicus curiae The Northwest Colorado Council of Governments, and special counsel to amici curiae, The Boards of County Com'rs of the Counties of Eagle and Grand, Colorado.
Beth A. Whittier, Eagle, for amicus curiae County of Eagle, Colorado.
Daniel J. Kaup, Walden, for amicus curiae County of Jackson, Colorado.
Ronald W. Stock, Aspen, for amicus curiae City of Aspen, Colorado.
Sandra M. Stuller, Aspen, for amicus curiae Board of County Com'rs of Pitkin County, Colorado.
Harden, Schmidt & Hass, P. C., George H. Hass, Richard Zier, Fort Collins, for amicus curiae Board of County Com'rs of Larimer County, Colorado.
LEE, Justice.
In this appeal, the appellants, the Board of County Commissioners of Summit County, the State of Colorado, and the Colorado Land Use Commission, seek to reverse the judgment of the district court which held *946 the Summit County Comprehensive Land Use Code (CLUC) to be invalid. The appellees are landowners in Summit County whose complaints were consolidated in the district court, seeking a declaration that the CLUC was invalidly adopted. The district court invalidated the CLUC, holding that it was an improperly adopted zoning measure which also was unconstitutional, both facially and as applied.
Certain of the complaints also sought damages on the theory of inverse condemnation. Some of the complaints also claimed damages from the individual defendants for an alleged conspiracy and damages under 42 U.S.C. § 1983. Upon motion the district court dismissed the inverse condemnation claims without prejudice and the other damage claims against the individual defendants with prejudice. Several of the appellants cross-appealed from the court's dismissal of their damage claims; however, the cross-appeals were dismissed by this court for failure to brief the issues raised by the cross-appeals.
We reverse the judgment declaring the CLUC invalid and unconstitutional.[1]

I.
Historically, the CLUC emerged from the development of a master plan by the Summit County Regional Planning Commission, certified to the board of county commissioners. In 1963, pursuant to the authority of section 30-28-101 et seq., C.R.S.1973 (1977 Repl. Vol. 12), the original master plan for the physical development of the unincorporated territory of Summit County was adopted by the Summit County Planning Commission.[2] The policy of the master plan was to promote concentrated growth in established communities while preserving the county's scenic qualities to protect future tourism potential. Consistent with the master plan, the first county zoning resolution was adopted by the board of county commissioners in 1969. The zoning resolution included a classification designated as A-1 Agricultural, under which one of the permitted uses was a 20 acre minimum lot size for a single family dwelling in the rural sections of the county. That zoning classification has remained in effect up to the time these actions were filed in 1978.
Summit County experienced rapid growth and a population increase. In 1975 the Summit County Regional Planning Commission[3] adopted an Interim Land Use Guide as an aid in evaluating land use and development proposals submitted by developers to the planning commission. The intent of the commission as expressed in the Interim Land Use Guide was to discourage commercial and high-density development outside existing growth centers. That same year a study was begun by the county's planning department to design a new master plan for the county and as a result, the CLUC was formulated and adopted by the Summit County Regional Planning Commission on April 20, 1978.[4] After public meetings at which some citizen concerns were voiced, the CLUC was readopted with amendments by resolution of the regional planning commission on July 6, 1978. The plan was then certified to the Board of County Commissioners of Summit County *947 and was approved on July 10 by motion of the board sitting as a planning commission. On August 8, 1978, the civil actions challenging the CLUC were filed, and a court order was issued staying the implementation of the CLUC. On August 21, 1978, on recommendation of counsel that the July 10th motion for and adoption of the CLUC may have been ineffective, the board of county commissioners sitting as the planning commission adopted the CLUC by resolution.
The basic land use policies of the CLUC emphasize the following general land use goals:
(1) To encourage high density and commercial development to locate within existing growth centers and to discourage such development from locating outside such centers;
(2) To preserve and maintain Summit County's rural character;
(3) To encourage land uses which will stabilize and diversify the economy.
In accordance with these general policies, the CLUC identified certain "growth centers" by boundaries and restricted certain types of development to the growth centers. By this means it sought to preserve the rural character of the undeveloped areas of the county and to avoid "sprawl" development throughout the county and to prevent "strip" development along the highways.
The appellees' quarrel with the CLUC resulted from their disagreement with the boundaries drawn identifying the growth centers and with the limitations proposed on the use of their property by reason of its exclusion therefrom and its classification as rural in nature. They contended in the trial court that the CLUC amounted to a rezoning of their property without due process, hearing, or compliance with the statutory procedures required for rezoning. They argued that the Code as adopted was unreasonable and arbitrary with regard to the treatment of their land and the designation of growth center boundaries which excluded their property, and unfairly and irrationally limited commercial growth. They sought to invalidate the CLUC, and also claimed damages in inverse condemnation, arguing that their property values had been lowered by the adoption of the CLUC.
Trial was to the court. The inverse condemnation claims and other damage claims were dismissed on motion of the appellants and the sole issue tried was the validity of the CLUC. The district court held that the adoption of the CLUC was legislative action; that the CLUC was in reality a zoning measure rather than a master plan; and that since the statutory procedures for zoning had not been followed, the enactment of the CLUC was invalid. The court also reviewed the constitutionality of the CLUC and held it to be unconstitutional beyond a reasonable doubt, both on its face and as applied to the plaintiffs.
Although the CLUC was enacted by resolution as a master plan for the county to be utilized as the guideline for future development for a period of four years, and thereafter to be reviewed and revised as believed necessary, the court found that the CLUC amounted to permanent zoning, directly affecting those landowners whose property was outside the designated growth centers.

II.
Recognizing that rapid growth and uncontrolled development may destroy Colorado's great resource of natural scenic and recreational wealth, the General Assembly in enacting the Local Government Land Use Control Enabling Act of 1974 declared:
"[I]n order to provide for planned and orderly development within Colorado and a balancing of basic human needs of a changing population with legitimate environmental concerns, the policy of this state is to clarify and provide broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions." Section 29-20-102, C.R.S.1973 (1977 Repl. Vol. 12).
Although growth and development are matters of state concern and state involvement, certain areas have been left to local control by the General Assembly. Section 29-20-101 et seq., C.R.S.1973 (1977 Repl. Vol. 12). Section 29-20-104 provides:

*948 "Powers of local governments. (1) Without limiting or superseding any power or authority presently exercised or previously granted, each local government within its respective jurisdiction has the authority to plan for and regulate the use of land by:
(a) Regulating development and activities in hazardous areas;
(b) Protecting lands from activities which would cause immediate or foreseeable material danger to significant wildlife habitat and would endanger a wildlife species;
(c) Preserving areas of historical and archaeological importance;
(d) Regulating, with respect to the establishment of, roads on public lands administered by the federal government; this authority includes authority to prohibit, set conditions for, or require a permit for the establishment of any road authorized under the general right-of-way granted to the public by 43 U.S.C. 932 (R.S. 2477) but does not include authority to prohibit, set conditions for, or require a permit for the establishment of any road authorized for mining claim purposes by 30 U.S.C. 21 et seq., or under any specific permit or lease granted by the federal government;
(e) Regulating the location of activities and developments which may result in significant changes in population density;
(f) Providing for phased development of services and facilities;
(g) Regulating the use of land on the basis of the impact thereof on the community or surrounding areas; and
(h) Otherwise planning for and regulating the use of land so as to provide planned and orderly use of land and protection of the environment in a manner consistent with constitutional rights."
While both the planning and zoning powers of local governments are related to rational development and regulation of land uses, the Colorado statutory scheme clearly distinguishes between the two functions. See section 30-28-101 et seq., C.R.S.1973. The duty of creating and adopting the master plan is assigned to the regional or county planning commissions, section 30-28-106, C.R.S.1973. In carrying out this duty the planning commission:
"[S]hall make careful and comprehensive surveys and studies of the existing conditions and probable future growth of the territory within its jurisdiction. The county or regional master plan shall be made with the general purpose of guiding and accomplishing a coordinated, adjusted, and harmonious development of the county or region which, in accordance with present and future needs and resources, will best promote the health, safety, morals, order, convenience, prosperity, or general welfare of the inhabitants, as well as efficiency and economy in the process of development, including such distribution of population and of the uses of land for urbanization, trade, industry, habitation, recreation, agriculture, forestry, and other purposes as will tend to create conditions favorable to health, safety, transportation, prosperity, civic activities, and recreational, educational, and cultural opportunities; will tend to reduce the wastes of physical, financial, or human resources which result from either excessive congestion or excessive scattering of population; and will tend toward an efficient and economic utilization, conservation, and production of the supply of food and water and of drainage, sanitary, and other facilities and resources." Section 30-28-107, C.R.S.1973.
The master plan is the planning commission's recommendation of the most desirable use of land. See Mott's Realty Corp. v. Town Plan and Zoning Commission, 152 Conn. 535, 209 A.2d 179 (1965); 1 A. Rathkopf, Law of Zoning and Planning § 12.05 (4th Ed.). Conceptually, a master plan is a guide to development rather than an instrument to control land use. 3 & 4 R. Anderson, American Law of Zoning §§ 21.15, 22.12 (2nd Ed.); 8 E. McQuillin, Municipal Corporations, Zoning § 25.08 (3rd Ed., 1976 Repl. Vol.). On the other hand, it is the task of the legislative body charged with *949 zoning to individually apply the broad planning policies to specific property, consistent with the public interest, and with notions of due process and equal protection. See generally 82 Am.Jur.2d Zoning and Planning 2; 1 E. Yokely, Zoning and Practice 1-2 (4th Ed. 1978). As stated by the Oregon Supreme Court, "[T]he [master] plan embodies policy determination and guiding principles; the zoning ordinances provide the detailed means of giving effect to those principles." Fasano v. Board of County Commissioners of Washington County, 264 Or. 574, 507 P.2d 23, 27 (1973).
The general rule is that zoning should be enacted in conformance with the comprehensive plan for development of an area, Fasano, supra; Haar, In Accordance with the Comprehensive Plan, 68 Harv.L.Rev. 1154 (1955); 1 E. Yokely, Zoning Law and Practice § 2-1 (4th Ed. 1978). However, the master plan itself is only one source of comprehensive planning, and is generally held to be advisory only, and not the equivalent of zoning, nor binding upon the zoning discretion of the legislative body. 1 & 2 A. Rathkopf, Law of Zoning and Planning § 12.01, et seq., § 30.02 (4th Ed.); State Ex Rel. Rochester Ass'n of Neighborhoods v. City of Rochester, 268 N.W.2d 885 (Minn.1978); Holmgren v. City of Lincoln, 199 Neb. 178, 256 N.W.2d 686 (1977); Todrin v. Board of Supervisors, 27 Pa.Cmwlth. 583, 367 A.2d 332 (1976); Coughlin v. City of Topeka, 206 Kan. 552, 480 P.2d 91 (1971); Sharninghouse v. City of Bellingham, 4 Wash.App. 198, 480 P.2d 233 (1971).
This rule is embodied in our statute. While the statute provides for master planning on a county level, the board of county commissioners is specifically empowered, by majority vote, to disregard the recommendations of the planning commission as set forth in the master plan. Section 30-28-110, C.R.S.1973; see also Margolis v. District Court, Colo., 638 P.2d 297, 305 (1981).
In conformity with the purposes of the county planning statutes, the Regional Planning Commission for Summit County adopted the CLUC by resolution, section 30-28-108, C.R.S.1973, and certified it to the board of county commissioners, section 30-28-109, C.R.S.1973. The regional plan became the official county plan when it was adopted by the county commissioners sitting as the county planning commission. Section 30-28-106(2)(b).[5]
The adopted resolution stated:
"No. 78-201
2. The Board of County Commissioners sitting as the Summit County Planning Commission hereby adopts as and for the master plan for Summit County, Colorado, the Summit County Comprehensive Land Use Code, adopted by the Summit County Regional Planning Commission in its Resolution 78-2 on July 6, 1978."[6]
Thus, the CLUC became the master plan for the county as contemplated by county planning statute, section 30-28-101 et seq., C.R.S.1973, and the "land use guidelines" and "development policies" expressed therein became the applicable criteria for future development in the county.
The trial court failed to perceive the true nature of the Summit County Comprehensive Land Use Code when it viewed it as mandatory in effect and concluded that it was an attempt by the board of county commissioners to restrictively zone the appellees' property without following the statutory procedures for enacting zoning. This conclusion overlooked the expressed intent of the resolution adopting the CLUC as a "master plan." Moreover, the court misconceived the effect of our statutes which do not empower the planning commission to enact zoning, but rather circumscribe the authority of the commission *950 to that of making a "zoning plan" for certification to the board of county commissioners, which is the governmental body vested with the authority to enact county zoning resolutions. Sections 30-28-102, -111, -112, and -113, C.R.S.1973. See Board of County Com'rs. v. City of Thornton, Colo., 629 P.2d 605 (1981); Famularo v. Board of County Commissioners, 180 Colo. 333, 505 P.2d 958 (1973); DiSalle v. Giggal, 128 Colo. 208, 261 P.2d 499 (1953); Crittenden v. Hasser, 41 Colo.App. 235, 585 P.2d 928 (1978). As we have stated above, master planning is distinguishable from zoning, both in cause and effect, since they serve different purposes. The General Assembly has clearly stated its authorization and support of, and recognition of the need for, county and regional planning. Nothing in our review of this case indicates to us that the CLUC was anything other than a master plan, advisory in effect, for the development of Summit County.

III.
We agree with the appellants that the trial court erred in not granting their motions to dismiss and for summary judgment on the basis that appellees lacked standing to challenge the validity of the CLUC because their challenges were premature.
The appellees did not allege that they had applied for and been denied proposed uses of their properties based on the provisions of the CLUC. Since the master plan did not have an actual impact on their property interests, their claims for relief did not allege a direct injury to a legally protected interest which presented an actual controversy for adjudication. See Wimberly v. Ettenberg, 194 Colo. 163, 570 P.2d 535 (1977); Heron v. City and County of Denver, 159 Colo. 314, 411 P.2d 314 (1966). In our view, the claims of the appellees were not ripe for review.
As the Supreme Court of the United States stated in International Longshoremen's and Warehousemen's Union, Local 37 v. Boyd, 347 U.S. 222, 224, 74 S.Ct. 447, 448, 98 L.Ed. 650 (1954):
"Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." Id.

See also L. Tribe, American Constitutional Law §§ 3-12 and 3-13 (1978).
At the time this case was commenced in the trial court, the CLUC had not been applied to any specific property through enactment of zoning or otherwise. The master plan, as such, is not susceptible of this kind of challenge, because the appellees cannot realistically demonstrate that they have suffered any actual harm as a result of its adoption. Ripeness is often problematic in challenges to master plans. See Dale v. City of Mountain View, 55 Cal.App.3d 101, 127 Cal.Rptr. 520 (1976); Penny v. Board of Supervisors, 53 Pa.D.C.2d 329 (1971). As was stated in Penny, supra:
"It is inherent in the recommendatory nature of the comprehensive planning concept that it neither can nor does have any specific or litigable impact such as to provide any practical or realistic occasion for judicial intervention. The formulation and adoption of a comprehensive plan are but intermediate and inconclusive steps in the planning process and in themselves are legally ineffective. No one's rights, pro or con, are affected thereby unless and until the recommendations thereof be implemented." Id. at 332.
In order to have a direct effect on property rights, the master plan must be further implemented through zoning, with proper notice and hearing. Section 30-28-112, C.R.S.1973; Stephans v. Board of County Commissioners, 41 Md.App. 494, 397 A.2d 289, aff'd in part and rev'd in part on other grounds, 286 Md. 384, 408 A.2d 1017 (1979). At such time as a property owner has applied for and been denied a proposed use for his land under existing zoning or future rezoning based upon the master plan, he may challenge the plan and the denial of his asserted right. However, considered alone, a master plan is merely advisory and does *951 not affect legally protected interests of property owners so as to confer standing to challenge the plan. Stephans v. Board of County Commissioners, supra; Selby Realty v. City of San Buenaventura, 10 Cal.3d 110, 514 P.2d 111, 109 Cal.Rptr. 799 (1973); see also Board of County Com'rs. v. City of Thornton, supra;[7]Wimberly v. Ettenberg, supra.
Accordingly, we reverse the judgment of the trial court which declared the Summit County master plan invalid and unconstitutional and awarded costs to the plaintiffs. We remand the consolidated cases to the trial court for further proceedings consistent with the views expressed herein.
NOTES
[1] We have been aided in our resolution of the issues in this case by amici briefs from the Boards of County Commissioners of Eagle County, Grand County, Jackson County, Larimer County, Pitkin County, and from the City of Aspen, the Northwest Colorado Council of Governments, the Colorado Municipal League, and Colorado Counties, Inc.
[2] The planning commission may be comprised of the members of the board of county commissioners, or may be a separate body appointed by the board of county commissioners. Section 30-28-101(4) and -103(1), C.R.S.1973.
[3] Regional planning commissions are provided for in section 30-28-105, C.R.S.1973.
[4] Before the adoption of the CLUC a series of meetings were held by the planning commission to discuss the proposed draft of the CLUC. A second series of meetings occurred between the county officials and the governing bodies of the municipalities of Summit County. As a result, some boundary line changes were made in the proposed growth centers. Also, cooperative land use agreements were signed between the planning commission and the towns of Dillon, Silverthorne, and Breckenridge concerning their common goals.
[5] Since the county had no planning commission, the commissioners adopted the plan sitting as the planning commission. Section 30-28-108, C.R.S.1973.
[6] The board had first adopted the plan by motion, but later adopted the plan by resolution on advice of counsel. See section 30-28-108. The delay in adoption by resolution is not significant in view of the advisory nature of the plan.
[7] This case is distinguishable from Board of County Com'rs. v. City of Thornton, Supra. In that case the majority of this court held that the City of Thornton had standing to challenge the County of Adams rezoning of property lying adjacent to city owned property, which allegedly was diminished in value because of the county rezoning. The court stated: "[A] complaining property owner, such as the City here, has a legally protected interest in insulating its property from adverse effects caused by the legally deficient rezoning of adjacent property...."

In the present case zoning or rezoning had not yet occurred pursuant to the CLUC Master Plan.