Peter C. DROSTE, individually and as Trustee of a Trust for the benefit of Peter C. Droste, Jr. and Elise Droste; and Bruce F. Droste, individually and as Trustee of a Trust for the benefit of Edward Droste and William Droste, Plaintiffs–Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF PITKIN, Defendant–Appellee.

No. 04CA0637.

Colorado Court of Appeals, Div. V.

Oct. 6, 2005.

Certiorari Granted Aug. 28, 2006.

Grimshaw & Harring, P.C., Wayne B. Schroeder, Jody Harper Alderman, Denver, Colorado, for Plaintiffs–Appellants.

John M. Ely, County Attorney, Pitkin, Colorado, for Defendant–Appellee.

ROY, J.

Plaintiffs, Peter C. Droste, individually and as trustee of a trust for the benefit of Peter C. Droste, Jr. and Elise Droste; and Bruce F. Droste, individually and as trustee of a trust for the benefit of Edward Droste and William Droste (the Owners), appeal the trial court's summary judgment in favor of defendant, the Board of County Commissioners of Pitkin County (the County), on the issue of whether the County had authority to impose a temporary development moratorium on their property. We affirm.

In 1963, the Owners purchased approximately 925 acres of land in unincorporated Pitkin County, now known as the Droste Ranch and lying between the City of Aspen and the Town of Snowmass Village. On March 25, 1974, the County passed a zoning ordinance applicable to lands encompassing the Owners' property that allowed for development of single family residences on lots of at least ten acres as a use by right. The ordinance remained in effect on May 17, 1974, when both the Areas and Activities of State Interest Act (AASIA), § 24–65.1–101, et seq., C.R.S.2005, and the Local Government Land Use Control Enabling Act (the Enabling Act), § 29–20–101, et seq., C.R.S. 2005, became effective.

In 1996, the Owners sold a conservation easement covering approximately 100 acres to the County for $480,000. In 1999, they sold a second easement for $7.5 million to the County and the Town of Snowmass Village covering an additional 500 acres. Following these transactions, the Owners owned approximately 345 developable acres.

Subsequently, the Owners filed several development applications. Two of these applications, filed in 2000, were for a 15,000–square foot residential dwelling and an access road to the proposed site of the residence. A third, filed in 2002, was for a proposed fourteen-home planned unit development. The County denied all three of these development applications, but granted a fourth application requesting permission to develop an agricultural structure on the property.

In February 2003, a representative of the Owners met with a representative of the County concerning three new potential applications for development of the Owners' property. Following these discussions, however, no applications were filed.

In March 2003, the County passed an emergency ordinance creating a temporary moratorium on accepting, processing, and approving development applications concerning certain lands in Pitkin County including the Owners' property. In the recitals of the ordinance, the County stated, referring to AASIA and the Enabling Act, that "[t]he State of Colorado has mandated that all areas of unincorporated Pitkin County be subject to a master plan by no later than January of 2004," and that the moratorium was necessary "to allow time to conduct a comprehensive study of what appropriate zoning and development regulations should be imposed as a result of the Master Plan process." Although the County noted that "an appropriate analysis of the area and adoption of necessary zoning regulations can be accomplished within sixty (60) days," it nonetheless also expressly stated that the moratorium would "remain in effect until formally terminated by the Board of County Commissioners."

On June 11, 2003, the County adopted an ordinance that amended the projected end date of the moratorium. Because the Pitkin County planning staff had notified the County that more than sixty days would be needed to finish its analysis, the County stated in the amended ordinance that "[t]he projected timeline necessitates that the temporary moratorium remain in effect until January 1, 2004, at which time the [County] may again determine whether the stated goals have been effectively achieved." In addition, the County noted that "[a]ll terms of the [original adopted ordinance] remain in full effect with the exception of the projected timeline for completion of the goals of the moratorium."

On May 14, 2003, the Owners filed an action in district court seeking a declaratory judgment that the temporary moratorium was void under the applicable statutes, and requesting injunctive relief enjoining the County from enforcing the terms of the moratorium and from changing any zoning regulations governing their property. The court

denied the request for injunctive relief and, after cross-motions were filed, granted summary judgment in favor of the County. In its order, the court found that the County had authority under AASIA to enact a temporary moratorium.

The Owners thereafter filed a motion for amendment of the trial court's findings and judgment pursuant to C.R.C.P. 59, which the court denied in a written order dated February 18, 2004. In this second order, the court determined that, in addition to its authority under AASIA, the County had authority under its general police powers and the Enabling Act to impose the moratorium. This appeal followed.

■ Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. A court must afford all favorable inferences that may be drawn from the undisputed facts to the nonmoving party and must resolve all doubts as to the existence of a triable issue of fact against the moving party. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814 (Colo.2004). Our review of an order granting summary judgment is de novo. *Bedard v. Martin*, 100 P.3d 584 (Colo.App.2004).

■ Because it is dispositive, we first address the Owners' contention that the trial court erred in concluding that the moratorium is authorized or permissible under the Enabling Act. We disagree.

As a threshold matter, we note that the Owners do not claim on appeal that the imposition of the moratorium is unconstitutional, but instead argue that the County was without authority to so act. Thus, we are not presented here with a question of whether a temporary regulatory measure has violated a constitutional provision, and we need not address such issues.

■ Statutory interpretation is a question of law that appellate courts review de novo. *Boone v. Bd. of County Comm'rs*, 107 P.3d 1114 (Colo.App.2004).

■ When construing statutory provisions, a court's primary task is to effectuate the intent of the General Assembly. To discern that intent, a court first looks to the statutory language, giving words and phrases their commonly accepted meaning. *Archibold v. Pub. Utils. Comm'n*, 58 P.3d 1031 (Colo.2002).

The legislative declaration of the Enabling Act provides in pertinent part:

The general assembly hereby finds and declares that in order to provide for planned and orderly development within Colorado and a balancing of basic human needs of a changing population with legitimate environmental concerns, the policy of this state is to clarify and provide broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions.

Section 29–20–102(1), C.R.S.2005.

The specific enumerated powers granted to local governments, including counties, *see* § 29–20–103(1.5), C.R.S.2005, are found in § 29–20–104, C.R.S.2005. That provision states, in pertinent part:

(1) [With an exception not relevant here], the power and authority granted by this section shall not limit any power or authority presently exercised or previously granted. Each local government within its respective jurisdiction has the authority to plan for and regulate the use of land by:

. . .

(b) Protecting lands from activities which would cause immediate or foreseeable material danger to significant wildlife habitat and would endanger a wildlife species;

. . .

(e) Regulating the location of activities and developments which may result in significant changes in population density;

. . .

(g) Regulating the use of land on the basis of the impact thereof on the community or surrounding areas; and

(h) Otherwise planning for and regulating the use of land so as to provide planned and orderly use of land and protection of the environment in a manner consistent with constitutional rights.

■ Thus, the Enabling Act grants broad powers to local governments to regulate the

use of lands within their respective jurisdictions for the purposes of, among other things, the protection of wildlife, the control of population density and growth, and the protection of the surrounding environment. *See Pennobscot, Inc. v. Bd. of County Comm'rs,* 642 P.2d 915, 919 (Colo.1982)(stating that "[u]ndoubtedly, the powers conferred upon the county pursuant to [§ 29–20–104] are quite broad").

In light of this broad grant of powers, reading the Enabling Act to deny local government the authority to conduct studies for the purpose of creating a master plan for the overall development of the land within its jurisdiction and to impose reasonable moratoriums on development to conduct those studies would be anomalous and would contravene the apparent purpose and intent of the General Assembly. In our view, the ability to enact such a temporary moratorium is necessarily implied in the Enabling Act. *See Dill v. Bd. of County Comm'rs,* 928 P.2d 809 (Colo.App.1996)(power to adopt a moratorium can be implied from both the Solid Wastes Disposal Sites Act and AASIA).

Temporary zoning ordinances imposing moratoriums on development, uses, and the issuance of building permits and adopted for the purpose of conducting studies on future development have been generally upheld in other jurisdictions as an exercise of general zoning power. *See, e.g., Almquist v. Town of Marshan,* 308 Minn. 52, 245 N.W.2d 819 (1976)(power to adopt moratorium implicit in power to adopt temporary zoning); *Cappture Realty Corp. v. Bd. of Adjustment,* 126 N.J.Super. 200, 313 A.2d 624 (1973)(absent explicit prohibition, a development moratorium may be adopted under general police power); *Dune Assocs., Inc. v. Anderson,* 119 A.D.2d 574, 500 N.Y.S.2d 741 (1986); *McCurley v. City of El Reno,* 138 Okla. 92, 280 P. 467 (1929); *see also* J.F. Ghent, Annotation, Validity and Effect of "Interim" Zoning Ordinances, 30 A.L.R.3d 1196 (1970).

The Owners argue that there can be no implied power under the Enabling Act to impose a moratorium because counties are given specific and limited power to impose moratoriums under the county planning and building codes statute, § 30–28–101, et seq., C.R.S.2005 (the county planning statute). In the alternative, they argue that if the county

planning statute is not the sole source of power to impose a moratorium, any implied power under the Enabling Act is limited by § 30–28–121, C.R.S.2005, at least as to duration. We are not persuaded.

Section 30–28–121 provides as follows:

The board of county commissioners of any county, after appointment of a county or district planning commission and pending the adoption by such commission of a zoning plan, where in the opinion of the board conditions require such action, may promulgate, by resolution without a public hearing, regulations of a temporary nature, to be effective for a limited period only and in any event not to exceed six months, prohibiting or regulating in any part or all of the unincorporated territory of the county or district the erection, construction, reconstruction, or alteration of any building or structure used or to be used for any business, residential, industrial, or commercial purpose.

The county planning statute establishes the authority of a county to zone land in unincorporated portions of the county. It authorizes the appointment of planning commissions, the adoption and implementation of master plans, and other activities incidental to land use planning. Section 30–28–106, C.R.S.2005. Section 30–28–121 authorizes the county to adopt temporary regulations for a period not to exceed six months, including the prohibition of further development, for the purpose of affording time to complete, adopt, and implement a master plan. The county planning statute dates from the 1930s. *See* C.S.A.1935, ch. 45A, § 20. Zoning ordinances and master plans limit the use of land but do not in and of themselves control the sequence of development, nor do they prohibit or limit development.

The Enabling Act is designed to give the local governments additional or supplemental powers for the purposes set forth in the act, including limiting development in hazardous areas, protecting wildlife habitats, protecting areas of historical or archeological significance, controlling population density, and providing for the phasing in of infrastructure. These special considerations, in many instances, supplement those normally involved

in creating a zoning master plan or administering a zoning regimen. *See Theobald v. Bd. of County Comm'rs,* 644 P.2d 942 (Colo. 1982).

Therefore, in our view, the Enabling Act and the county planning statute have different, though complementary, purposes, and the limitation on temporary zoning in the county planning statute does not prohibit or limit a moratorium on development for the purpose of studies under the Enabling Act.

We disagree with the Owners' characterization of the moratorium as "open ended." The announced purpose of the moratorium was stated as follows:

> The moratorium is to allow time to conduct a comprehensive study of what appropriate zoning and development regulations should be imposed as a result of the Master Plan process. This study shall examine what appropriate development density and development intensity should be approved in the moratorium area. The intent of the [Board of County Commissioners] in enacting this moratorium is to allow sufficient time to conclude the County Master Plan process and enact appropriate zoning regulations to implement the adopted Master Plan.

The duration of the moratorium was stated to be "until formally terminated by the Board of County Commissioners." While the stated duration of the moratorium may be read as "open ended," it was nevertheless constrained by its stated purpose and its length measured by the time reasonably necessary to conduct the requisite studies and prepare the plans. *See Almquist v. Town of Marshan, supra* (six-month moratorium valid if study proceeds promptly and appropriate zoning ordinances are expeditiously adopted when study is completed). If the tasks were not accomplished in a reasonable time then the moratorium might have been challenged on the ground that its duration was unreasonable, and it might have been judicially dissolved on that basis.

However, in oral argument, the Owners' counsel informed this division that the moratorium was dissolved after a period of ten months. The dissolution of the moratorium does not render this appeal moot. *See Rus-*

*sell v. City of Central,* 892 P.2d 432 (Colo. App.1995).

Therefore, we conclude that the trial court did not err in finding the County had authority under the Enabling Act to impose the temporary moratorium at issue here.

Having so concluded, we not address the Owners' other contentions that the County did not have the authority to impose a moratorium pursuant to AASIA or its general police powers, if any.

The judgment is affirmed.

Chief Judge DAVIDSON and Judge DAILEY concur.